**NOWKA et ux. v. WEST.**

No. 8532—Opinion Filed Dec. 16, 1919.

(Syllabus by the Court.)

**1. Appeal and Error — Review — Equity Case.**

In an equity case it is within the power of the Supreme Court to consider the evidence and render judgment thereon, but the rule is well established that the Supreme Court will not interfere with the judgment of the lower court, unless the same is clearly against the weight of the evidence.

**2. Vendor and Purchaser—Misrepresentations—Inspection of Property.**

Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness and been misled by over-confidence in the statements of another.

**3. Same—Cancellation of Instruments — Evidence.**

Evidence examined, and held that, the judgment of the trial court not being clearly against the weight of the evidence. the refusal to grant the equitable relief prayed for will not be disturbed.

Error from District Court, Caddo County; Thos. A. Edwards, Assigned Judge.

Action by Martin and Nellie Nowka against M. E. West. Judgment for defendant, and plaintiffs bring error. Affirmed.

A. J. Morris, for plaintiffs in error.

C. H. Carswell, Bristow & McFadyen, and H. J. West, for defendant in error.

PITCHFORD, J. This action was commenced in the district court of Caddo county, by the plaintiffs, Martin Nowka and Nellie Nowka, against the defendant, M. E. West, for the cancellation of a relinquishment to certain school lands located in said county. From a judgment in favor of the defendant, the plaintiffs prosecute this appeal. Subsequent to the filing of the appeal, the death of the plaintiff Martin Nowka has been suggested. The cause has been revived in the names of Nellie Nowka, William Nowka, Charles Nowka, Ida Engle, Louise Daugherty, August Nowka, Rant Nowka, and Martin Nowka, Junion, heirs-at-law of the said Martin Nowka. For convenience, the plaintiffs in error will hereafter be referred to as plaintiff.

The evidence is not only conflicting, but is also very voluminous. The trial court. after hearing all the evidence, having the witnesses before him, observing their demeanor, taking into consideration their interest in the litigation, and being in a position to judge the bias or prejudice, if any, of the various witnesses and to appreciate the probative effect of the testimony of the several witnesses, found from all the evidence as follows: That a contract for the exchange of property was made between R. E. Kirby and Martin Nowka, the said R. E. Kirby exchanging the N. E. ¼ of section 19, township 59, range 21 west, in Linn county, Missouri, at an agreed price of $14,500 for the school-land lease and improvements on the S. W. ¼ of section 33, township 12, range 11, in Caddo county, Oklahoma, at an agreed price of $8,500, the Missouri land being valued at $14,500 and being subject to an incumbrance of $6,500, which was assumed by Martin Nowka, and to make up the difference a cash payment of $500 was made; that Martin Nowka had made an exchange of other real estate and property in Caddo county, Okla., for certain real estate in Livingston county, Mo.; that the defendant, having learned of said prior exchange by the said Nowka, approached the said Nowka and suggested to him the exchange of the Kirby land for the school land, and the defendant, with Martin Nowka and Charlie Nowka, a son of Martin Nowka, and one Townsend, with whom the said Martin Nowka had made the former exchange of real property, went to Missouri; that Martin Nowka, Charlie Nowka, and defendant inspected the lands in Linn county, Mo., that the Nowkas had full opportunity to and did inspect the lands in Missouri; that prior to the consummation of said exchange between Kirby and Martin Nowka, one Connors had entered into a contract with Martin Nowka for the exchange of certain property owned by him in Livingston county, Mo., for certain other real estate owned by Martin Nowka in Caddo county, Okla., and as a part of the exchange price, had taken an option from the said Martin Nowka upon the lands in Linn county, Mo., at an agreed price of $80 per acre, the said option being valued at at $500; that by the terms of the contract between Kirby and Martin

Nowka, it was provided that an abstract should be furnished by Kirby, showing a good title to the real estate in Linn county, Missouri; that prior to leaving Oklahoma to inspect the lands in Missouri, Martin Nowka and wife executed an assignment of the school-land lease to the defendant to be used in making the exchange for the lands in Missouri, the assignment being made in the name of the defendant for the reason that a nonresident could not hold a lease to school lands; that the abstract to the land in Missouri furnished by Kirby did not show a good title; that Martin Nowka returned the abstract to the defendant, at which time he agreed that if West would have the title perfected so that the abstract would show a good title, the transaction would be satisfactory and the abstract accepted without objection; that the defendant proceeded with reasonable diligence and procured a decree in the circuit court of Linn county, Mo., quieting the title to said real estate; that the defendant purchased the school lands from Kirby and paid therefor the sum of $3,100, and expended moneys in a sum exceeding $50 in quieting the title to the land in Missouri; that R. E. Kirby and the defendant, West, were brothers-in-law, but that this fact was not disclosed to Martin Nowka or to Charles Nowka, his son; that in the inspection of the land in Linn county, Mo., and in the matter of inquiry in that state as to the value of land, no obstacles were placed in the way of said Martin Nowka and his son Charles by the defendant; that Martin Nowka and his son were not intoxicated at the time of the inspection of the land, or at any time during the execution of the contract, to such an extent as would render them incapable of attending to business and looking after their business affairs; that the defendant had no connection or interest in any of the real estate transactions between Martin Nowka and other parties in the state of Missouri; that the relationship between the defendant and Martin Nowka and Charles Nowka was not confidential; that no trust or fiduciary relations existed between them; that the parties dealt at arm's length; that the abstract furnished by the defendant disclosed a good title; that the cash value of the land in Linn county, Missouri, was $9,480; and that the preference rights and improvements on the school quarter of plaintiff at the date of the contract amounted to $4,500. The trial court found, as a matter of law, that the decree of the circuit court of Linn county, Missouri, quieting the title to the real estate in Missouri, was sufficiently broad to give the plaintiff a marketable title to said real estate: that the plaintiff was not entitled to rescind the contract; and that the judgment should be for the defendant.

While there are several assignments of error, the main point urged by plaintiff's counsel upon this court is that the judgment of the trial court is clearly against the weight of the evidence. We desire to commend the zeal, industry, and research of counsel, respectively, as shown by their briefs. Few cases have been considered by us where the briefs were of more genuine assistance than those furnished in the case at bar. This cause is one of a purely equitable nature, and being such, it is the duty of this court to consider the whole record and weigh the evidence, and if we find that the judgment of the trial court is clearly against the weight of the evidence, to render, or cause to be rendered, such judgment as the trial court should have rendered. Schock v. Fish, 45 Okla. 12, 144 Pac. 584. But, on the other hand, the rule is well established that the Supreme Court will not interfere with the judgment of the trial court unless the same is not sustained by the weight of the evidence. DePriest v. Welch, 70 Oklahoma, 174 Pac. 261. The court below found that the fact of the defendant, West, and Kirby being brothers-in-law was not disclosed to Martin Nowka and his son. Evidently in making this finding the trial court overlooked the testimony of Martin Nowka as to what took place in Schmitz's office on the evening of August 30th, at which time and place the contracts and deeds were made. The plaintiff, Martin Nowka, testified as follows:

"Q. Now, just tell the jury what took place there.

"A. Well, they came in there pretty late, must be about 7 or 8 o'clock, or something like that—dark—and went into Schmitz's office, and they fixed the papers and signed them, and then they tell that is his brother-in-law and his wife—that is the first time I know it is his brother-in-law, you know. Of course, they went ahead fixing these papers, you know, to sign up. West is his brother-in-law and he say he left his specks—'I left my specks'—and West says he give him his specks, and I say just sign it, and his brother-in-law lost his specks too, and I lost mine too, but West furnished me specks."

But whether or not plaintiff knew of this relationship, the court found that if this fact was unknown to plaintiff, still no fraud was practiced upon plaintiff by reason of the relationship between defendant and Kirby.

The trial court found that the plaintiff had every opportunity to ascertain the value of the Kirby land, and several weeks after the contract was made the plaintiff Martin Nowka agreed to accept the title to the Kirby land, if the defendant would cause a suit to be brought and the title to the land quieted

as against the Brown heirs. Plaintiff contends there was no agreement of this kind. We have examined the evidence on this point, and find that the defendant is corroborated by the evidence of Durham and Kern, who were present at the time. When a party seeks' to avoid his contract on the ground that he was induced to enter into it by fraudulent representations, he must act without delay, and any recognition of the contract after he becomes aware of the fraud estops him from thereafter asserting its invalidity on that account. This rule of law is laid down in 4 R. C. L. 514, as follows:

"The rule is that where a party has been induced to enter into a contract by false and fraudulent representations, he may, upon discovering the fraud, rescind the contract; but the great weight of authority holds that if the party defrauded continues to receive benefits under the contract after he has become aware of the fraud, or if he otherwise conducts himself with respect to it as though it were a subsisting and binding engagement, he would be deemed to have affirmed the contract and waived his right to rescind; in other words, the party who has been misled is required as soon as he learns the truth, and discovers the falsity of the statement on which he relied, with all reasonable diligence to disaffirm the contract and give the other party an opportunity of rescinding it, and of restoring both of them to their original positions."

In Elliott on Contracts, vol. 3, pp. 586-7, sections 2429-30, the rule is laid down in this language:

"Where a party, knowing the facts entitling him to rescission, afterwards, without fraud or duress, ratifies the same, he has no claim for relief. And in order to thus defeat the remedy of rescission, it is not necessary that there be an express ratification of the contract, for ratification may be implied by conduct amounting to ratification after knowledge of the facts which entitle him to rescind. * * * Any acts of recognition of the contract, or any transactions with the defendant relating to the subject-matter thereof, with knowledge of the facts, and inconsistent with an intention to rescind will, in general, have the effect of affirming the transaction."

In 6 Cyc. 297, the rule is stated as follows:

"When a party, with a knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; and any acts of recognition of the contract as subsisting, or any conduct inconsistent with the intention of avoiding it, have the effect of an election to affirm. This doctrine seems to rest, not upon the principle of a new contract between the parties, nor yet upon the ordinary principle of estoppel in pais, but rather upon a distinct principle of public policy, that all that justice or equity requires for the relief of a party having such cause to impeach a contract is that he should have but one fair opportunity, after full knowledge of the rights, to decide whether he will affirm and take the benefits of the contract, or disaffirm it and demand the consequent redress. Any other rule would be regarded as unjust, even toward the party guilty of the wrong out of which grows the right to rescind."

Plaintiff contends that defendant grossly misrepresented the value of the Kirby land; however, he admits that he and his son, in company with the defendant, went to the land and inspected it, but claims that they were wholly unacquainted with the values of land in that community, and were not as careful as they otherwise would have been, for the reason that the defendant told them he had been raised there and had been assessor of that county; that the plaintiff and defendant were neighbors at Hinton, had known each other for several years; that the plaintiff had done business with the defendant's bank; that the defendant had promised plaintiff he would protect him in the deal and would not take advantage of him in any way. The finding of the court, however, on this point is that the parties dealt at arm's length, that no fiduciary relation existed between them, and that defendant placed no obstacles in the way of plaintiff fully informing himself. It is a general rule that representations as to values are considered mere matters of opinion, and even when untrue are not to be considered as fraudulent. When men trade with each other, they deal at arm's length. Each relies upon his own judgment. Each is able to see, or pretends to see, more in his own property than in the property of the other, and it is natural to extol the virtues of one's own property. This practice has become so universal as to be expected in every trade. This rule is well expressed by the Supreme Court of the United States, in Slaughter, Admr., v. Gerson, 13 Wall. 379, as follows:

"Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he had been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another."

The evidence, however, clearly discloses that the plaintiff did not rest the transac-

tions entirely upon the representations of the defendant. We find that when the plaintiff was on the land, he stated that it was not as it was represented to him by the defendant, and that he did not like the land; that it had been represented to him as smooth, and he found it rough. After viewing the land and returning to Chillicothe, the defendant was unable to consummate the deal with the plaintiff. Connors was the party who finally induced the plaintiff to make the deal. Plaintiff says that West had conspired with Connors by giving the latter $600 to help him to make the deal. This contention is not borne out by the evidence. Connors and Townsend were on a deal at the same time with the plaintiff for other lands. Connors was the man who informed the defendant that he would prevent the deal between Kirby and plaintiff unless Kirby would allow him $600 commission. After Kirby had agreed to pay this commission, Connors induced plaintiff to make the deal with Kirby. It is true that Connors took an option on the Kirby land and paid the plaintiff $500 for this option. A careful examination of the evidence clearly discloses that the plaintiff did not rely entirely upon any representation made by the defendant as to the value of the Kirby lands. We find that he not only inspected the lands, but inquired of other parties in no way connected with the deal as to their value. In Wyrick v. Campbell, 67 Oklahoma, 170 Pac. 267, Owen, J., in delivering the opinion of the court, said:

"The general rule is that fraud cannot be predicated on representations as to value, for the reason that such representations are generally regarded as mere opinions, or seller's statements, and in law do not constitute fraud. This is true, though they may operate to defeat an action for specific performance. This rule is based on the fact that value is largely a matter of judgment and estimation, about which reasonable and honest men may differ. Where the parties stand on an equal footing, have equal means of knowledge, and there is no relation of trust and confidence existing between them, fraud cannot be predicated on representations of value. Such representations rarely induce a man to enter into a contract without negligence on his part in not ascertaining from other sources as to whether such representations are true or false. The law does not deny its aid in such cases because it looks upon a want of candor and sincerity with indulgence, but it will not encourage that indolence and inattention, which are no less pernicious to the interests of society, and will not relieve those who suffer damage by reason of their own negligence or folly."

In Hazlett et al. v. Wilkin, 42 Okla. 20, 140 Pac. 410, it is said in the syllabus:

"A purchaser of land cannot predicate fraud upon statements made by the vendor, which, either by reason of their form or subject-matter, show to be mere expressions of opinion. A purchaser is not justified in relying upon the accuracy of such statements, and if he does, and the opinion turns out wrong, the purchaser has no action because thereof."

In 39 Cyc. 1285, we find this statement:

"Where there is an inspection, or an opportunity for inspection, by the purchaser, the doctrine of caveat emptor applies notwithstanding a false statement by the vendor as to the value of the realty contracted for, unless the purchaser lives at a distance from the realty, or is prevented by fraud on the part of the vendor from making the examination, or the conditions are such as to render an examination impossible, or a relation of trust and confidence exists between the parties."

We are of the opinion that every finding made by the trial court, except as heretofore stated in regard to the relationship between the defendant and Kirby being unknown to the plaintiff, was fully sustained by the evidence. The defendant denied making any representations as to the value of the Kirby land; he denied that he at any time stated the Kirby land was worth $90 or $95 per acre. The Nowkas made other and independent inquiries concerning the land. Connors testified that on the way out to view the land, he heard defendant tell them it had been 23 years since he had been there, and that he did not know what the land was worth. He also says that the Nowkas told him the land would be costing them about $70 or $75 in the trade. The witness Abell testified that the day the trade was made, Charles Nowka asked him about the value of the land, and he told him that he thought it would trade at $65 or $75. We find that the Nowkas also made inquiries of the witnesses Warner, Broyles, and Dienst. If this evidence is true, and the trial court found that it was true, then it clearly appears that the plaintiff was not relying upon the statements made by the defendant. From a careful examination of the record, we conclude that the judgment of the lower court, not being clearly against the weight of the evidence, will not be disturbed. The judgment of the trial court is in all particulars affirmed.

All the Justices concur except McNEILL and HARRISON, JJ., absent and not participating.