**S. G. DENNING, W. N. Denning, and M. T. Matthews, Plaintiffs-Appellants,**

v.

**BOLIN OIL COMPANY, a partnership composed of D. Huston Bolin, D. Phil Bolin, Robert L. Bolin, and C. W. Bolin, Defendants-Appellees.**

**C. W. STRADLEY, Defendant, Third-Party Plaintiff, Appellee,**

v.

**Frank GRIGGS, Bolin Oil Company, a partnership composed of D. Huston Bolin, D. Phil Bolin, Robert L. Bolin, and C. W. Bolin, Third-Party Defendants.**

No. 145–69.

United States Court of Appeals, Tenth Circuit.

Feb. 25, 1970.

Joe Cannon, Oklahoma City, Okl., for appellants.

Lee Sellers, of Prothro & Sellers, Wichita Falls, Tex., for appellees Bolin Oil Co., a partnership composed of D. Huston Bolin, D. Phil Bolin, Robert L. Bolin, and C. W. Bolin.

Jack L. Freeman, Oklahoma City, Okl., for appellee C. W. Stradley.

Before HILL, SETH, and HOLLOWAY, Circuit Judges.

SETH, Circuit Judge.

The appellants brought this action for damages asserting fraud in the sale to them by appellees of scrap metal. Jurisdiction is based on diversity of citizenship. A jury trial was commenced and when the appellants had put on their evidence and had rested, the court granted appellees' motion for a directed verdict. This appeal thus concerns the standards for such a directed verdict, and the Oklahoma law applicable to the proof made.

The record shows that the defendants-appellees, Bolin Oil Company and the individual partners, had an agreement with the defendant, Frank Griggs, whereby an abandoned oil refinery was purchased and the equipment sold for scrap. Under the agreement, Frank Griggs was to be responsible for dismantling the refinery and for the preparation of the machinery and the scrap material for sale. This was done, and the different piles of scrap and the equipment were apparently divided among the defendants, an auctioneer was engaged, and a sale was held. At this sale the scrap metal in question was sold as a lot in a large pile some ninety-three feet long, fifty-five feet wide, and eight to ten feet high. The lot also included three barrels of brass scrap. When the lot was put up for sale the defendant, Frank Griggs, told the bidders that it was estimated that the pile of scrap would weigh 1,000 to 1,200 tons. The defendant, C. W. Stradley, purchased the lot at the sale for $6,000.00. The next day, C. W. Stradley went to some of the appellants and offered to sell the scrap to them at the same location and in the same pile as he bought it at the auction. He told them that it was said at the auction the pile weighed 900 to 1,200 tons, and that the barrels contained 2,000 to 2,400 pounds of brass. The several appellants went to look at the scrap pile, measured it, climbed over it, and looked at it as much as they

wished. These men were long experienced in the business of buying and selling scrap. After the inspection they purchased the pile and the barrels of brass from C. W. Stradley for $6,250.00. They estimated the pile to contain 1,000 to 1,200 tons of metal and that it was worth some ten thousand dollars.

After the sale from Stradley to plaintiffs was completed, equipment was sent by appellants to the location to load the scrap on trucks. When the pile was torn open by the cranes it was found that large empty tanks were at the bottom, also that empty drums supported large tank bottoms on which the scrap had been carefully and artfully piled. In short the pile was carefully built to conceal large internal empty spaces. When the scrap was loaded it was found to weigh only some 181 tons; the barrels of brass scrap had only a layer of brass on top which weighed about 400 pounds.

As indicated, the trial court directed a verdict for the defendants at the close of appellants' case. He stated in part that the appellants " * * * relied on what they did, on what they investigated and saw. * * * " Also, " * * * the plaintiffs bought what they saw and they believed from their own investigation, not from any statement, representations, promises and certainly no guaranty from anyone." The court also stated that the appellants made no inquiry of anyone who piled it, and did not " * * * take off the top or dig into it. * * * "

In several recent cases we have considered appeals from directed verdicts and judgments n. o. v. These include Weeks v. Latter-Day Saints Hospital, 418 F.2d 1035 (Tenth Circuit, December 4, 1969); Fischer Construction Co. v. Fireman's Fund Ins Co., 420 F.2d 271 (Tenth Circuit, December 19, 1969); Gulf Ins. Co. v. Kolob Corp., 404 F.2d 115 (10th Cir.); and C. H. Codding & Sons v. Armour & Co., 404 F.2d 1 (10th Cir.). In Olson v. Maxwell, 263 F.2d 182 (10th Cir.); we considered a demurrer to the evidence and stated:

" * * * In considering a demurrer to the evidence, the court shall disregard all evidence which is unfavorable to the plaintiff and shall consider all of his evidence as true, together with the reasonable inferences which may be drawn therefrom. It shall not weigh the contradictory evidence or any differences in plaintiff's testimony on direct and cross examination. * * * "

In C. H. Codding & Sons v. Armour & Co., supra, we said:

"The rule for the granting of a directed verdict has been often repeated. Its essence requires that before a motion for a directed verdict shall be sustained the evidence must be 'all one way or so overwhelmingly preponderant in favor of the movant that the trial court in the exercise of its sound discretion would be required to set the verdict aside.' Chicago, Rock Island and Pacific R. R. v. Howell, 10th Cir., 401 F.2d 752. * * * "

Using the above standards, our examination of the record shows that plaintiff established that the pile of scrap was constructed in a manner intended to deceive anyone looking at it carefully, and that the brass scrap was placed in the barrels in the same manner. Appellants also showed that the defendant Griggs stated at the auction before the bidding that the pile was estimated to weigh 1,000 to 1,200 tons. The record shows that the particular lot had been designated by the sellers at the auction as the property of the defendants Bolin and tagged as their property.

The record does not show any participation by defendant-appellee Stradley in the preparation of the material for the sale nor any knowledge by him of the manner in which it was stacked. It shows that he told appellants that the statement had been made at the auction that the pile weighed 900 to 1,200 tons. The appellants testified that they relied upon the statements of Stradley and upon their inspection of the pile.

To first consider the issues as to appellee Stradley, it is apparent that no showing of active or deliberate fraud on his part was made. The trial court relied upon the inspection and upon the Oklahoma decisions considering analogous circumstances.

The Oklahoma court in Nowka v. West, 77 Okl. 24, 186 P. 220, said:

"Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by vendor's misrepresentations."

This decision was recently cited by the same court in McDaniel v. Quinn, 307 P.2d 127. Another expression of the Oklahoma law on this point is found in Leasure v. Hughes, 72 Okl. 75, 178 P. 696, referred to in Finefrock v. Carney, 263 P.2d 744. The court in Gutelius v. Sisemore, 365 P.2d 732, also considered this issue and stated that the purchaser of a house under which rain water accumulated to the height of the floors, and had to be pumped out, had no cause of action against the seller. The purchaser, the court said, had looked at the house, and the court held that he should have known that the air vents under the house were not constructed properly, that the slope of the yard and the composition of the soil were such as to lead to the accumulation of water under the house. The court held that silence where the facts are available to both parties does not constitute fraud. The court there again cited and quoted from Nowka v. West, 77 Okl. 24, 186 P. 220, and cited Long v. Kendall, 17 Okl. 70, 87 P. 670.

The above cited case of Finefrock v. Carney, Okl., 263 P.2d 744, may not be entirely consistent with Rucker v. Tietz, Okl., 376 P.2d 341, and with the cases cited above, but the continued reliance on the old case of Nowka v. West, 77 Okl. 24, 186 P. 220, by the Oklahoma courts must be considered significant.

■ Thus applying the well developed and demanding duty to inspect in Oklahoma, and the broad and extensive consequences of an inspection, it must be held that it was not error for the trial court to direct the verdict against appellants as to appellee Stradley.

■ The same conclusion is also reached on the directed verdict for the other defendant-appellees. These are the parties who had the material prepared for sale and who made the sale to the initial purchaser Stradley at the auction. As to the action by the ultimate purchasers against these appellees, it is apparent that the issue of privity is the basic one. On this point there are cited no significant decisions of the Oklahoma courts, and we thus take the determination of State law by the trial judge as correct unless manifestly wrong. Jamaica Time Petroleum, Inc. v. Federal Ins. Co., 366 F.2d 156 (10th Cir.); Pittsburgh-Des Moines Steel Co. v. American Surety Co. of N. Y., 365 F.2d 412 (10th Cir.); Bushman Construction Co. v. Conner, 351 F.2d 681 (10th Cir.).

■ As to this issue the record shows two separate sales of the scrap, the first one by the Bolin appellees to Stradley at the auction, and the second and independent private sale by Stradley to the appellants. The pile remained undisturbed during both sales. There was shown no privity between the appellants and the Bolin appellees, and the trial court appears to have disposed of the issue on this basis. Again we cannot say that the trial judge was manifestly wrong in his determination that no liability of the Bolin defendants to the plaintiffs-appellants was shown under the facts and in the application of local law.

The appellants suggest that the pile of scrap was as something built or constructed for resale and would make some application of rules relating to manufactured items, but there is no Oklahoma authority on this point or cases to suggest such an extension of existing doctrine.

Affirmed.

HOLLOWAY, Circuit Judge (concurring specially):

I agree with the affirmance of the judgment. However, while the record is not free from doubt, I do not believe that the trial court made a determination of Oklahoma law on the privity issue discussed in the opinion, and believe instead that the directed verdict for the Bolin appellees was based on other grounds. Nevertheless, I agree that such ruling should be sustained on the basis of the privity issue since the record does not show that the representations complained of were made to the plaintiffs, nor that they were intended to reach the plaintiffs and be acted on by them. In such circumstances I believe that Oklahoma would follow authorities denying recovery.[1] And in all other respects I agree with the analysis as well as the disposition in the opinion of Judge Seth.

---

1. See Henry v. Dennis, 95 Me. 24, 49 A. 58; Campbell v. Gooch, 131 Kan. 456, 292 P. 752; Ellis v. Hale, 13 Utah 2d 279, 373 P.2d 382; Gainesville National Bank v. Bamberger, 77 Tex. 48, 13 S.W. 959; New York Title & Mortgage Co. v. Hutton, 63 App.D.C. 266, 71 F.2d 989, cert. denied, 293 U.S. 605, 55 S.Ct. 122, 79 L.Ed. 696; Western Union Tel. Co. v. Schriver, 141 F. 538, 549 (8th Cir.); Restatement, Torts, § 533 and comment b thereto.