Opal I. VAUGHN, Guardian of the Person and Estate of Johnnie E. Vaughn, Plaintiff-Appellee,

Mid-Continent Casualty Company, Intervening Plaintiff-Appellee,

v.

CHRYSLER CORPORATION, a corporation, Defendant-Appellant.

No. 663–69.

United States Court of Appeals, Tenth Circuit.

April 14, 1971.

Rehearing Denied June 21, 1971.

See also 46 F.R.D. 6.

Hickey, Circuit Judge, since deceased, did not participate in decision.

William G. Smith, Oklahoma City, Okl. (Leroy J. Patton of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., on the brief) for defendant-appellant.

Mickey James of Green & James, Oklahoma City, Okl., for Mid-Continent Casualty Co.

Michael C. Stewart of Rinehart, Cooper & Stewart, Oklahoma City, Okl., for Opal I. Vaughn (Gus Rinehart, Oklahoma City, Okl., on the brief).

Before LEWIS, Chief Judge, HICKEY[1] and HOLLOWAY, Circuit Judges.

LEWIS,[2] Chief Judge.

This is a product liability case in which Chrysler Corporation, the sole defendant, appeals from an adverse judgment for damages entered in favor of plaintiff-appellee for personal injuries suffered by her ward and husband in a one-car automobile accident. The evidentiary facts upon which liability was premised in the action are not now in dispute and present a clear-cut question of law dispositive of the appeal.

The subject product was a Dodge truck manufactured by Chrysler Corporation. This corporation sold the truck to Chrysler Motors, a wholly-owned corporate subsidiary. Chrysler Motors then sold the truck to its wholly-owned subsidiary Dodge Trucks, Inc. Dodge Trucks is a retail truck dealer. This company sold the truck to another dealer, Clark Motor Company of Oklahoma City, and Clark sold the truck to the ultimate consumer leading to its use by the injured Vaughn.

While the truck was in the possession of Dodge Trucks the front axle was converted from a 5,000- to 7,000-pound axle and the steering assembly accommodated to the axle change. In making this change the holding clamp in the steering assembly was not securely clamped and

[1.] Judge Hickey, since deceased, heard the arguments in this case but did not participate in this decision.

[2.] By reassignment.

the resultant unresponsive steering wheel caused the accident to occur. And in summation of the dispositive facts we consider the following to be pertinent:

1. The consumer bought from an authorized Chrysler dealer a new truck ordered to specification.

2. The dealer did not have the truck in stock and obtained the vehicle from another dealer, Dodge Trucks.

3. The truck was not defective in manufacture.

4. The truck became defective when altered by Dodge Trucks.

5. The defect caused the accident resulting in injury and damage to Vaughn.

6. Dodge Trucks is a wholly-owned subsidiary, once removed, of Chrysler Corporation, the original manufacturer.

7. The separate corporate organizations of Dodge Trucks and its parent Chrysler Motors are in no way sham. Each of these companies is adequately financed and performs a legitimate and independent function within the total corporate structure of Chrysler Corporation resulting in tax and organizational benefits to Chrysler Corporation.

8. The mechanical work done on the subject truck was not specifically known to, authorized by, and/or delegated by custom to Dodge Trucks as an incident of manufacture by Chrysler Corporation.

Against this factual background the trial court instructed the jury, in pertinent part as follows:

> Evidence has been permitted to come before you in this case tending to show that the separate corporation, Dodge Trucks, Inc., made alterations on the Dodge truck in question by changing the factory installed front axle, from 5,000 pound type to 7,000 pound type, and during opening statements by the Court and counsel you were told that the defendant, Chrysler Corporation, as one of its defenses claimed that this alteration and modification of the truck by the separate legal entity Dodge Trucks, Inc., would exonerate and absolve the defendant Chrysler Corporation of liability herein. I instruct you, however, that as a matter of law and under the facts in this case the modifications made by Dodge Trucks, Inc., would not relieve Chrysler Corporation of liability in this case if you find that the said truck had a defective steering mechanism when it was delivered by the Clark Motor Company to Mr. Welborn. This is so because the truck was purchased by Welborn as a new vehicle and under the law of the State of Oklahoma a manufacturer is liable in tort when an article it places on the market proves to have a defect that causes injury to a human being and said manufacturer cannot escape such liability by tracing the defect to one of its wholly owned subsidiaries provided the said defects are caused prior to the time that said article is placed on the market for sale through an authorized dealer as a new vehicle.

Once again we are faced with the necessity of trying to anticipate how a state court, here Oklahoma, would solve a completely novel legal issue when that court has had no opportunity to give the problem any consideration. We are, of course, entitled to lean on the judgment of the trial judge as knowledgeable and persuasive in the determination of the law and affairs of his resident state. Nevin v. Hoffman, 10 Cir., 431 F.2d 43, 46; Brunswick Corp. v. J. & P. Inc., 10 Cir., 424 F.2d 100, 104; Denning v. Bolin Oil Co., 10 Cir., 422 F.2d 55, 58. And since the judgment of the trial judge seems to reflect a desirable trend in the rapidly progressive field of product liability, we affirm.

We start with the premise that the undisputed facts in this case show liability to exist within the overall corporate structure of the parent corporate manufacturer, Chrysler Corporation. No true stranger to the financial or marketing structure of the manufacturer has here intervened to destroy the quality of manufacture. The imposed liability on Chrysler Corporation is thus

not that of an insurer but strict to the extent that the reliance of a consumer on the integrity of manufacturer is not defeated by a complicated corporate structure in which the consumer has no interest nor knowledge that his confidence in the product has been legally thwarted through the mysteries of business technicalities and complications completely foreign to him. The hard factual core of this case lies in the transaction itself: the purchase and sale of a new Dodge truck, defective on delivery. We can see no real reason why the liability of the primary manufacturer should be defeated by an integrated corporate financial structure established and totally controlled by the primary manufacturer. The very nature of this transaction, repeated as it is daily many times throughout the nation, should remain as a desirable and perhaps even necessary fortress allowing, absent extraneous factors, recovery if consumer protection is to be meaningful in the law.

█ Although we recognize that our decision goes much further than just re-iterating existing law we are not without some comfort in principles established in the courts of Oklahoma and elsewhere. The doctrine of strict liability in tort in consumer product cases is firmly established in Oklahoma. Barnhart v. Freeman Equipment Co., 441 P.2d 993. *And see* "Oklahoma's Emergence from Antiquity, Acceptance of the Doctrine of Strict Liability in Tort," 6 Tulsa L.J. 61, wherein the writer in analyzing the cited and earlier Oklahoma cases indicates the evolvement of an applicable doctrine in Oklahoma of imposing strict liability in consumer product cases wherever the social pressures indicate need as a matter of public policy. The case at bar would seem to be such a case in practical application.

The fact that the subject truck was not defective in original manufacture is no defense. Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391

P.2d 168. Although the defect in *Vandermark* was occasioned by the acts of an authorized dealer and imposes liability upon the manufacturer through delegation of authority still the case emphasizes the need for consumer protection although the product passes through numerous steps in commerce between the manufacturer and consumer. And perhaps the ultimate in consumer protection was established by the Third Circuit in Gizzi v. Texaco, Inc. (Appeal of Giaccio), 437 F.2d 308, decided Jan. 20, 1971, where a divided court held open the possibility of liability of a manufacturer for a defective service or product not its own but perhaps marketed under its apparent authority.

Affirmed.