BARRY et al. v. ORAHOOD.

No. 30602. Dec. 15, 1942.

*132 P. 2d 645.*

E. B. McMahan, of Boise City, and Hughes & Dickson and Rizley & Dale, all of Guymon, for plaintiffs in error.

L. E. Tryon and Grester H. Lamar, both of Guymon, for defendant in error.

OSBORN, J. This action was instituted in the district court of Cimarron county by J. Fred Orahood, hereinafter referred to as plaintiff, against Warren B. Barry and Ben Forsythe, hereinafter

referred to as defendants, wherein plaintiff sought the cancellation of a deed to 320 acres of land located in Cimarron county. The deed was executed by plaintiff to defendants. Plaintiff alleged temporary mental incapacity on his part and that defendants were guilty of fraud and deceit. Issues were joined, the cause was tried to the court, judgment was entered in favor of plaintiff, and defendants have appealed.

It appears that the land involved herein was acquired by plaintiff and Ada B. Orahood, former wife of plaintiff, by their joint industry during coverture; that title was taken in the name of Ada B. Orahood; that she died on January 3, 1937, leaving the plaintiff as sole heir to said property. At the time of the transaction herein involved the title to the land was in the estate of Ada B. Orahood, deceased, of which estate A. C. Bradshaw was administrator. On February 11, 1938, plaintiff married Nellie R. Orahood.

It appears that plaintiff was a former resident of Cimarron county, but for more than a year prior to the date of the transaction herein involved he had been a resident of Dallas, Tex.

In February, 1940, the Pure Oil Company commenced the leasing of certain lands for oil and gas purposes in the vicinity of the land owned by plaintiff. It was contemplated that a block of approximately 60,000 acres would be procured. On April 15, 1940, the block was fairly well completed, but there were certain tracts of land located within the block that had not been leased, including the land of plaintiff. It appears that the defendants did not know where the plaintiff resided, but on April 9, 1940, said defendants, accompanied by one Virgil James, began an attempt to locate plaintiff. They went to Hasty, Colo., then to Mangum, Okla., and from Mangum to Dallas, Tex.; they advertised in a Dallas newspaper in an attempt to locate the plaintiff. On April 15, 1940, defendants located plaintiff's wife at a business establishment where she worked and from her learned that plaintiff was then confined in St. Paul's Hospital in Dallas, where he was suffering from a streptococci infection resulting from an injury. Accompanied by plaintiff's wife, defendants went to the hospital and conferred with plaintiff with reference to the purchase of the land. Some conversation was had with reference to the purchase price, and later in the evening the parties returned to the hospital, where a quitclaim deed was signed by plaintiff and delivered to defendants and a check for $125 as the agreed purchase price was delivered to plaintiff's wife. At that time defendants stated that they were acquiring the land for agricultural purposes. No suggestion was made that the mineral rights in the land had become valuable.

It appears that plaintiff's wife made an effort to cash the check (ineffectual by reason of lack of plaintiff's signature) and then learned that there was oil activity in the vicinity of the land and decided that the check should not be cashed.

With respect to the mental condition of plaintiff at the time the deed was executed, plaintiff relied in the main upon the testimony of the medical men who treated him at the hospital. Dr. O. W. Gibbons, the surgeon who operated on plaintiff, gave the date of the operation as April 12, 1940. The witness testified that plaintiff was being treated by the administration of sulphanilamide intravenously, and that he was given morphine to relieve pain; that as a result of the sickness and treatment, the witness was of the opinion that plaintiff was incapable of sound judgment at the time the deed was executed. Dr. I. J. Nowlin stated that plaintiff's mind was in no condition "to properly evaluate circumstances and events, or conduct any business that would require any judgment; that on April 15, 1940, his condition was such as to require a blood transfusion," and on that date it was most likely that his mental condition was at its worst. Dr. Frank Kelley, who gave the blood transfusion to plaintiff, stated that on April 15, 1940, "his sensorium was considerably disturbed, because of toxemia and the therapy we were giving him." It was agreed by

the medical men that on the date of the transaction involved herein it was doubtful whether or not plaintiff would recover.

The record discloses that on April 12, 1940, three days after defendants entered upon their search for plaintiff, an oil and gas lease upon the property herein involved was sold by the administrator of the estate of Ada B. Orahood, deceased, for the sum of $5.25 per acre, or a total of $1,680.

At the conclusion of the hearing the trial court entered certain findings of fact embracing in general the facts which we have stated, and concluded as follows:

"The court further finds that by reason of the following:

"1. The failure and refusal of the defendants to inform the plaintiff of the true value of the land;

"2. The misleading representations of the defendants as to the purpose for which they desired the land;

"3. Their anxiety about the plaintiff and the land;

"4. The amount of consideration paid; and

"5. The weakened physical and mental condition of the plaintiff;

"—that the plaintiff was overreached by the defendants and undue advantage was taken of the plaintiff by said defendants.

"The court further finds from the evidence that said deed ought to be canceled, set aside, and held for naught."

It is urged, first, that the court was in error in its conclusion that there was a duty on the part of defendants to inform plaintiff of all the facts relating to the true value of the land, that is, that there was contemplated oil development and that oil and gas leasing was in progress in the vicinity.

Silence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation. Connelly Bros. v. Dunlap, 170 Okla. 143, 39 P. 2d 155. But if on account of peculiar circumstances there is a positive duty on the part of one of the parties to a contract to speak, and he remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud. Morris v. McLendon, 167 Okla. 68, 27 P. 2d 811. In determining whether there is a duty to speak, consideration must be given to the situation of the parties, the matters with which they are dealing, and the subject matter in hand. Equitable Life Ins. Co. v. Halsey, Stuart & Co. (C.C.A. 7th) 112 F. 2d 302. Silence alone is not sufficient to constitute fraud; there must have been an obligation to speak. Salter v. Aviation Salvage Co., 129 Miss. 217, 91 So. 340, 26 A. L. R. 987.

American Law Institute, Restatement, Torts, vol. 3, § 551, p. 117, is, in part, as follows:

"(1) One who fails to disclose to another a thing which he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter which he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question."

23 Am. Jur., Fraud and Deceit, § 78, is, in part, as follows:

"The principle is basic in the law of fraud as it relates to nondisclosure that a charge of fraud is maintainable where a party who knows material facts is under a duty, under the circumstances, to speak and disclose his information, but remains silent. . . . In order that suppression of the truth may constitute fraud, there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other and which the other party is entitled to have communicated to him. . . ."

In the case of Georgia Marble Co. v. Standard Tile Co., 19 Tenn. App. 258, 86 S.W. 2d 429, 432, it was said:

" '. . . Hence, in order that suppression of the truth may constitute fraud, there must be a suppression of facts which one party is under a legal or equitable

obligation to communicate to the other, and which the other party is entitled to have communicated to him. In other words, the facts concealed must be such as, in fair dealing, the one party has a right to expect to be disclosed, and such as the other party is bound to disclose.' 12. R. C. L., pages 307, 308."

See, also, annotation and authorities 56 A. L. R. 434.

Defendants argue that since the parties were dealing at arm's length and there was no fiduciary relationship between them, the failure to voluntarily disclose all of the facts relating to the value of the property did not constitute actionable fraud. There are a great many cases which hold that a fiduciary relationship between the parties requires full disclosure of material facts, but the duty to disclose does not always depend upon the establishment of such relationship. The relation of the parties, the nature of the subject matter of the contract, or the peculiar circumstances of each particular case, may be such as to impose a legal or equitable duty to disclose all material facts. See Hays v. Meyers, 32 Ky. L. Rep. 832, 107 S. W. 287, 17 L. R. A. (N. S.) 284.

In the instant case the trial court stated its reasons for the conclusion that defendants owed a duty to plaintiff to voluntarily make full disclosure of all the facts relating to the value of the property. There is ample evidence to sustain the findings upon which the conclusion is predicated. The court found that defendants knew of the procurement of oil and gas leases in the vicinity of plaintiff's land; that they went to considerable pains and effort to locate plaintiff; that they informed him that they were purchasing the land for agricultural purposes, and that the actual value of the land for this purpose was less than the amount of the indebtedness then existing against it; the evidence is ample to sustain the finding that when the transaction was had the plaintiff was in a weakened physical and mental condition to the extent that he was unable to conduct any business that would require the exercise of judgment; that

defendants were informed of the seriousness and gravity of his condition. We therefore think that the trial court was correct in holding that there existed a duty on the part of defendants to make a disclosure of all the facts relating to the value of the property.

It is urged that the trial court erred in the admission of the testimony of Nellie R. Orahood, the wife of plaintiff, who was called as a witness and testified in his behalf. The contention is predicated upon 12 O. S. 1941 § 385, subd. 3, which prohibits a husband or wife from testifying for or against each other, except concerning transactions in which one acted as the agent of the other. The trial court ruled that the wife acted as agent of the plaintiff and was a competent witness. As heretofore pointed out, the defendants first conferred with the wife with reference to the purchase of the land, she arranged the conference between defendants and plaintiff; the check given in payment of the purchase price was delivered to her; she made an ineffectual effort to cash the check but was unable to do so because the same was not indorsed by the plaintiff. Before she procured the indorsement and cashed the check she learned of the oil activity in the vicinity of the land and decided that the check should not be cashed. These circumstances, in connection with the further fact that plaintiff was physically and mentally unable to act for himself at the time of the transaction, sustain the court's conclusion that she acted as plaintiff's agent.

Defendants contend that the consideration paid by them was adequate. The record shows that there was an outstanding mortgage against the land which, together with unpaid taxes against the land, amounted to a total of $3,599.94. The consideration paid to plaintiff for his equity in the land was $125. It is shown that the land had been appraised at $5 per acre for agricultural purposes in the administration proceeding. As heretofore stated, the oil and gas lease was sold for $5.25 per acre. The value of the royalty or mineral rights in the land was estimated to be

622

from $5 to $10 per acre. It thus appears that there was some disparity between the value of the land and the amount agreed to be paid.

This is a case of equitable cognizance, and we cannot say that the judgment is contrary to the clear weight of the evidence.

The judgment is affirmed.

WELCH, C.J., and GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, V.C.J., and RILEY and BAYLESS, JJ., absent.