Raymond **WEBSTER** and Emma Lucille Webster, Plaintiffs In Error,

v.

G. H. **WEBB** and Ruth Webb, Defendants In Error.

No. 37113.

Supreme Court of Oklahoma.

May 21, 1957.

Rehearing Denied June 18, 1957.

Memminger & Cook, by C. B. Memminger, Atoka, for plaintiffs in error.

Paul & Montgomery, Durant, R. Kay Matthews, Atoka, for defendants in error.

CORN, Vice Chief Justice.

Plaintiffs brought this action for reformation of a deed, and to quiet title to mineral interest in 80 acres of land (E2, NE4, Sec.

34, Twp.2S, R 10E) in Atoka county. The factual background, from which evolved the litigation culminating in this appeal, resulted from the following transactions involving this property.

The Federal Farm Mortgage Corporation held title to the land under a sheriff's deed. September 16, 1940 Federal Farm Mortgage Corporation, hereafter referred to as FFMC, contracted to sell to one Gilbert, warranty deed to be executed upon fulfillment of contract, the grantor reserving an undivided ¼ of the minerals. This contract was recorded December 6, 1954. In October, 1942 Gilbert (and wife) made conveyance in the form of warranty deed to plaintiffs, and shortly thereafter (November 7, 1942) assigned their contract to plaintiffs. Both the contract of conveyance and the assignment mentioned reservation of ¼ mineral interest by FFMC.

November 29, 1943 plaintiff executed a contract of sale to defendant reserving an undivided half of mineral interest and defendants went into possession. The agreement provided a warranty deed, then executed and held in escrow, would be delivered to defendant upon full payment of the contract. No mention was made of the reservation of mineral interest by FFMC. On December 17, 1946 plaintiffs executed a quit-claim deed, which defendant recorded January 6, 1947. The instrument recited: "This deed to convey only one half of all and mineral rights, with the surface; the other one half belongs to other grantors." It is this deed plaintiffs sought to have reformed. Following this letter, signed by defendant but typed on plaintiff's letterhead, advised FFMC defendant was owner of this land.

FFMC advised defendant the quit-claim deed was insufficient to convey title since plaintiff did not hold title, but only a contract for a deed to the surface and an undivided ¾ of minerals, the original purchaser (Gilbert) having made no mineral reservation when assigning his contract to plaintiff. Defendant was advised to straighten the matter out with plaintiffs and secure proper assignment of their in-

terest. Pursuant to this direction defendant, April 5, 1947, secured plaintiffs' assignment of "all their right in and to that certain agreement for the sale of real estate made and entered into' * * *" between Gilbert and FFMC without referring to reservation of any mineral interest. February 6, 1948 defendants mortgaged the property to plaintiffs to secure payment of a small loan. The instrument, which was drafted by plaintiff, covered the surface and an undivided ¾ mineral interest, and made no mention of any reservation or claim of mineral interest by plaintiffs. The mortgage was released June 19, 1953. October 20, 1950 FFMC conveyed to defendants by warranty deed, reserving an undivided ¼ minerals.

Plaintiffs' petition claimed legal and equitable title to undivided half (40 acres) mineral interest, acquired by warranty deed from Gilbert; that they had retained such interest in deed to defendant, who was claiming adversely to plaintiffs under deed from FFMC wherein such grantor attempted to convey an undivided ¾ mineral interest. Plaintiffs asked that deed be cancelled insofar as adverse to their claim and that their title thereto be quieted.

Defendants made general and specific denial of plaintiffs' claims, and alleged fact to be that defendant had acquired entire ownership except ¼ undivided interest reserved by FFMC. By cross-petition claimed fee simple title and possession, except reservation mentioned, under warranty deed from FFMC, and asked that their title be quieted.

Plaintiffs' reply, or amendment to the petition, alleged their intention to retain an undivided half of the mineral interest when executing the deed; and, if the instrument did not clearly retain such interest same should be reformed to accomplish this. Plaintiffs further plead the contract of sale, and attached a copy of the instrument disclosing the agreement to deliver a warranty deed, then held in escrow, upon completion of the contract.

Defendants filed reply and answer to the reply and amendment to the petition; (1) denying allegation concerning plaintiffs' in-

tent to retain the mineral interest; (2) alleging the contract and the deed which was executed and delivered were separate and distinct transactions; (3) the original contract was modified by agreement, the modified contract being fully executed by plaintiffs' execution and delivery of written assignment of all their rights under original FFMC agreement; (4) by such assignment plaintiffs divested themselves of all legal and equitable title or interest in the property; (5) the alleged cause of action to reform the quit-claim deed did not accrue within 5 years prior to commencement of the action and therefore was barred by 12 O.S.1951 § 95, subd. 1, the applicable statute of limitations; (6) plaintiffs guilty of laches in seeking reformation of deed and claiming an interest while knowing they had assigned all their interest to defendants.

Extended narration of the evidence introduced by the parties is unnecessary. Plaintiff, a real estate dealer, testified he handled the transaction as agent for his wife. Negotiations with defendant were based upon asking price of $1,000 with plaintiff retaining half the minerals, but finally agreed upon price of $900 with plaintiff retaining half the mineral interest. When defendant completed the contract plaintiff drafted the quit-claim deed without referring to the contract; learned defendant was claiming the minerals when advised defendant had opportunity to lease the land; and at that time stated belief that he had reserved half the minerals and so put defendant off in order to investigate; when defendant brought the assignment from FFMC plaintiff was busy and executed same without investigation; admitted not having given defendant the warranty deed called for by the contract, but thought that one had been drawn and probably remained in his files, and when quit-claim deed was executed thought he had retained half the minerals. When the land was sold to defendant the mineral interest had little value, and plaintiff made a difference of $100 between a half and a quarter of minerals; although he claimed an interest

in the minerals at the time, the mortgage which defendant gave him in 1948 was drafted without mention of the mineral interest simply because he accepted defendant's word in the matter. Plaintiff could not recall having read a letter to defendant (from FFMC relating to need for assignment), and denied having stated the defendant was getting a larger mineral interest than originally thought, as well as other testimony by defendant concerning conversations and negotiations. Plaintiff had executed a lease to an oil company.

Defendants testified he purchased the property in 1943 with the understanding that he was to receive half the mineral interest; during negotiations plaintiff said nothing about reducing the price in order to reserve more mineral rights; did not read all the contract but relied upon plaintiff, and after completing payment received a quit-claim deed and then had plaintiff write a letter to the Federal Land Bank advising of change of ownership; upon receipt of reply he took same to plaintiff who stated, after reading the letter, defendant had received ¼ more minerals than he thought; defendant thought he owned all mineral interest except the ¼ reserved by FFMC, and knew nothing of plaintiffs' claim until an oil company discovered the error in the instrument, whereupon he took the matter up with plaintiff, who refused to admit he had retained no interest therein. Defendant did not consult an attorney and did not have a title examination, but relied upon plaintiff during all negotiations. At first defendant expected only half the minerals but from conversation with plaintiff, and after receipt of deed from FFMC concluded he owned all except the ¼ reserved therein, since plaintiff never had claimed any interest, except for the reservation in the original contract. An oil company had paid defendant $1,500 for a lease upon a ¾ interest in the minerals.

After hearing the evidence the trial court took the case under advisement. Thereafter judgment was entered finding the issues in plaintiffs' favor, and quieting their title to an undivided one half interest in.

the minerals. The court further found plaintiffs intended to retain an undivided one half interest in the minerals, and that the deed to defendants, (erroneously described as a deed dated November 29, 1943) should be reformed to show the true intention of the parties as to reservation of such interest.

Defendants urge seven propositions as grounds for reversal of the trial court's judgment. Plaintiffs present three subdivisions of argument in support of the correctness of this judgment, based upon the grounds that when a mutual mistake has been made, equity will reform such deed to carry out the intention of the parties; and, that a judgment in a case of equitable cognizance will not be disturbed unless clearly against the weight of the evidence. We are of the opinion the issues hereafter discussed effectively dispose of the appeal and obviate the need for separate consideration of the various arguments offered by the parties in support of their respective positions.

The basis for the conclusion reached herein is derived from the following facts reflected by the record. In dealing with defendants the plaintiff, Webb, stood in a fiduciary capacity, at least to the extent that he was bound to disclose material facts concerning the property of which he had actual knowledge. Plaintiff's failure to speak amounted to an actual suppression of a fact which should have been disclosed, and amounted to fraud. Barry v. Orahood, 191 Okl. 618, 132 P.2d 645; 23 Am.Jur., Fraud and Deceit, Sec. 76, et seq; 55 Am. Jur. Vendor and Purchaser, Sec. 71. When the Gilberts assigned the original purchase contract from FFMC to plaintiff, knowledge of the reservation of ¼ of the minerals was brought home to plaintiff. Such assignment vested in plaintiff only an equity to purchase the land, subject to the reservation of the assignor, and plaintiff could not sell or assign any larger interest than that acquired by the assignment, under which he went into possession of the property.

However, plaintiff did not assign his equitable interest acquired by assignment, which would have revealed the outstanding reservation of ¼ mineral interest, but led defendants into the belief that, upon the completion of the contract, a fee simple title would be conveyed to them subject to the recited reservation of one half minerals. There was nothing to put defendants upon notice as to the true condition of the title. This fact, coupled with plaintiff's possession of the property and apparent claim of ownership, was sufficient to lead defendants into belief the entire fee was vested in plaintiff and that even by the terms of the contract a one half interest in the minerals were being conveyed. At this point it is readily observed that the equities of the transaction stopped in plaintiffs' hands.

Although plaintiff knew ¼ of the minerals had been reserved by FFMC, in the original purchase contract, he neither mentioned such fact nor saw fit to assign his rights thereunder. Instead he chose to negotiate a new contract with defendant upon such basis as to lead them into the belief that he owned the entire fee and was reserving half the mineral interest. Plaintiff's conduct and dealings in the transaction, particularly when no means were available by which defendants could ascertain the true facts, cannot be considered other than as inequitable. For this reason it is apparent that plaintiffs were not entitled to equitable relief by way of reformation of their deed upon the grounds the instrument did not conform to their real intent and purpose.

A further matter deserves attention, in view of plaintiffs' argument that an action for reformation of a deed to correct a mistake of fact is an action wherein equity will act to correct the mistake, and the trial court's judgment will not be disturbed unless clearly against the weight of the evidence. Plaintiffs' action for reformation of the deed in question was upon the grounds that the deed resulted from a mistake, and did not reflect the true intent of the parties. In such cases the rule is that, to justify reformation of a deed, the evidence must be clear and convincing as to the mistake and its mutuality, and mere

preponderance of the evidence is not enough. Bombarger v. Bloss, 196 Okl. 153, 163 P.2d 551; Setterstrom v. Phelan, 182 Okl. 453, 78 P.2d 415.

■ Review of the evidence relating to the supposed mutuality of the alleged mistake, and as to the parties' intention, was in direct conflict. Plaintiffs' evidence was that both understood one half of the minerals were being reserved. Defendant testified positively it was his understanding he was to get one half the minerals. However, there was other evidence which is noteworthy. Plaintiff understood that ¼ of the minerals had been reserved by the FFMC. Although the contract called for reservation of one half the minerals, the quit-claim deed expressly conveyed a half interest, because the remaining half interest belonged to other grantors. Plaintiff knew FFMC retained a mineral interest, and that he had acquired the remainder under the assignment from Gilbert. (Plaintiff's own testimony was that he was asking $1,000, for the land and half the minerals.) When considered in connection with other evidence relating to consummation of the transaction and eventual execution of the quit-claim deed, it cannot be said that the evidence fairly discloses that the deed failed to express the intent of the parties as the result of mutual mistake.

Construed as a whole the evidence, urged by plaintiffs as supporting their position, is equally susceptible of the construction that plaintiff knew FFMC held ¼ of the minerals and was reserving an additional ¼ to himself, thus leaving the remaining one half which was granted expressly under the deed. Because the evidence is susceptible of such interpretation, it is impossible to say the evidence, upon which the claim of mutual mistake is based, is sufficiently full, clear, unequivocal and convincing to support the trial court's judgment.

■ The judgment, therefore, is reversed in part, and judgment is rendered quieting defendants' title to the undivided one half mineral interest expressly conveyed in the quit-claim deed (dated Decem-

ber 17, 1946) from plaintiffs to Raymond Webster. No question is raised by either party concerning the undivided one fourth mineral interest reserved by Federal Farm Mortgage Corporation. The title to the remaining undivided one fourth mineral interest is quieted in plaintiffs. Costs of the appeal are divided equally between plaintiffs and defendants.