**Wiley HUBBARD and Vincent Mueggenborg, Plaintiffs in Error,**

v.

**Ann R. BRYSON, Deceased, Raymond Bryson, Administrator of Estate of Ann R. Bryson, A. Francis Porta, Successor, Defendants in Error.**

**No. 42082.**

Supreme Court of Oklahoma
July 14, 1970.

Rehearing Denied Sept. 22, 1970.

Ruth & Beall, Kingfisher, Thomas M. Barrett, Oklahoma City, for plaintiffs in error.

Porta, Weaver & Bass, El Reno, for defendants in error.

DAVISON, Justice.

This action was instituted on March 5, 1965, by Ann R. Bryson, hereinafter referred to as plaintiff, against Wiley Hubbard and Vincent Mueggenborg, hereinafter referred to as defendants, wherein plaintiff sought to cancel, vacate and set aside a purported agreement, hereinafter referred to, and to quiet title in plaintiff covering 160 acres of land in Canadian County, Oklahoma, described as the North-

east Quarter (NE¼) of Section 15, Township 14 North, Range 9 West.

According to the parties' Stipulation for Revivor, Mrs. Bryson died subsequent to the filing of the briefs herein. Said stipulation is hereby approved and this cause is hereby revived in the names of the defendants in error. However, since defendants in error's interests lie on Mrs. Bryson's side of the controversy, we will hereinafter observe no distinction in their legal entities, but will refer both to this deceased party and her said successors in interest, collectively, by Mrs. Bryson's trial court designation as "plaintiff."

Plaintiff's petition alleged that the purported agreement was insufficient to constitute a contract for sale of real estate and that same was not intended to constitute a contract of sale. Plaintiff further alleged due to the fraud and deceit on the part of defendants she was overreached in signing or witnessing said agreement and that by reason thereof the price offered for said land was wholly inadequate.

The agreement in question was executed on February 15, 1965, and is as follows:

"Mrs. Bryson agreed to sell N.E. Quarter Sect. NE¼ 15–14–9 for 20,000 with 5,000 down when title is approved the balance will be paid in full. The mineral will rights will go back to the owner of the land at Mrs. Bryson death. The crops rent will go to the new owner.

Witness By

Wiley Hubbard

Vince Mueggenborg

Ann R. Bryson"

The undisputed testimony on behalf of plaintiff shows that on February 15, 1965, she was 76 years of age and a resident of Okarche, Oklahoma; that a year previous to the execution of the agreement she had fallen and broken her hip and four operations had been performed on her; that just prior to February 15, 1965, she went to Oklahoma City to have her hip reset and was there confined to the hospital for a week and then transferred to the hospital at Okarche where she was confined for two months, being at a time between 3 and 4 months before the execution of the agreement; that at the time of the execution of the agreement she was still under the treatment of a doctor which fact was known to the defendant Hubbard.

The testimony further showed that the land involved was given to plaintiff by her mother a number of years ago; that she had no children and had been a widow for a number of years and lived alone; that the land in question was the only land she owned in Oklahoma and was located several miles from Okarche; that plaintiff knew nothing about land and had never bought or sold any land or oil and gas interests; that plaintiff had leased the land to a tenant for a number of years and the tenant deposited the rent in the bank for her; that she had not been to the land in about a year and did not know anything about any gas wells being near the farm nor did not know about the completed gas wells in nearby sections 20, 21, 22 or 23, and that the defendants never informed her of any gas wells although the defendants knew, at least, that there were some derricks near the land.

The evidence further showed that the plaintiff's brother had sold a nearby piece of land (160 acres) of similar quality, 5 or 6 years before for $15,000 but she was not aware of the fact that he had reserved the mineral rights in himself; also that she was not aware of the fact that lands in the county had appreciated in value from the time her brother sold his land.

The evidence further shows that the defendants were men of business experience; that defendant Hubbard was a son-in-law of defendant Mueggenborg; that he was a land owner and operated a dairy farm; that defendant Mueggenborg was a land owner and bought cattle extensively. Both defendants had been residents of near Okarche for many years.

The evidence is conflicting as to which of the parties set the price of $20,000. However, plaintiff said she thought the land was

worth $20,000 and defendant Mueggenborg said it was worth that much.

Leading up to the execution of the agreement, the defendant Hubbard came to plaintiff's home on Sunday afternoon, February 14, 1965, and talked to plaintiff about the purchase of the land. Hubbard testified that he had never been on the land in question but that afternoon he drove by the land and saw it from the road; that he never got out of the car but just saw the land from the car window. This defendant admitted, however, that at night from his home he could see some lighted oil derricks near the land in question.

It appears that the next day, February 15, 1965, both defendants appeared at plaintiff's home and talked about the purchase of the land. While they were there a Mrs. Loosen, a niece of plaintiff's, came by to see her; that Mrs. Loosen is the wife of the banker of Okarche, who was a large land owner in Canadian County and a man who was experienced in land values.

During this meeting, and after Mrs. Loosen had left plaintiff's home, one of the defendants called his lawyer in Kingfisher for the purpose of preparing a contract that day but the lawyer was unavailable until the following morning. The defendants, apparently of the opinion that Mrs. Loosen might inform her husband about the advisability of the contemplated sale, and evidently thinking that plaintiff might change her mind about selling the property, suggested that plaintiff execute, with them, the above stated agreement which contained the wording of defendant Mueggenborg. Plaintiff's testimony was to the effect that she thought she was signing as a witness and did not intend the instrument to be a deed to the land.

It appears that plaintiff did talk with Mr. Loosen later that day and came to the conclusion that she was being cheated and when defendants came by for her the next morning she refused to go with them

to their lawyer and tried to return to them the two checks for $2500 each which they had left with her the day before.

That upon plaintiff's refusal to proceed further with the proposed sale leading up to the execution of the deed defendants had their acknowledgments taken on the instrument in question and immediately filed same in the office of the County Clerk of Canadian County, being on February 17, 1965.

Plaintiff knowing that $20,000 was in excess of the amount her brother received for his 160 acres some six years previously, but without knowing that her brother retained the mineral rights, and being unfamiliar with the actual value of the land, and without counsel or independent advice or other information, other than that which she could have received from the defendants, indicated her willingness to sell the land at the indicated amount.

For a picture of the total value of the land in question on February 15, 1965, considering both the surface and the mineral values, we direct attention to the testimony of witnesses.

James Weldon, a petroleum engineer, who was familiar with the vicinity of the land in question, including the oil and gas values, testified that he was familiar with the completed gas wells hereinbefore referred to; that from his study of the area he calculated the amount of gas reserve under the whole of Section 15–4–9 to be nine billion cubic feet, thus amounting to two billion, five hundred thousand cubic feet under the 160 acre tract in question and placed a value of $9000 for the minerals.

The witness Paul Loosen, who is a large owner of land in the Okarche area and who had handled many transactions involving the sale of real estate, oil and gas leases and mineral rights in Canadian County, testified that the land without the minerals had a value of $30,000, and that the minerals had a value of from $8000 to $12,000. This witness also testified that

in July, 1964, 105 acres of minerals under the Northwest Quarter of the same section as herein involved, was sold to Pan American Oil Co. for $100 per acre.

The witness J. A. Short, an auctioneer and real estate broker with forty years experience, and well acquainted with the value of real estate in the particular area, testified that the land with the minerals "could have easily brought $40,000" or the surface without the minerals had a salable value of between $27,000 and $30,000.

Defendants' witness Roy Tech, a farmer who lived near the involved land was of the opinion that the tract under consideration had a value of $16,000 without the minerals and with the minerals a value of about $28,000.

Defendants' witness John D. Rohwer, who lived several miles from the land involved, placed a value on the land without the minerals at $19,000.

Neither of the above witnesses had any experience of buying and selling land or minerals except their own.

At the conclusion of the evidence the trial court entered a general judgment in favor of plaintiff and quieted the title to the land in question in plaintiff.

The trial court had the witnesses before him. From the physical facts in evidence the trial court must have concluded that the defendants knew from their knowledge of real estate values in the community that they were getting a tremendous bargain in their attempted purchase. The trial court evidently took into consideration the business experience of defendants and the lack of business experience of the plaintiff, coupled with her old age, infirmity and illness. The "big hurry" on the part of defendants to make a purchase could have

and should have been considered in the trial court's decision. Also the fact that the defendants, who stated that they only saw the land by passing one side of it from their car, could have been a factor in the mind of the trial court. The fact that the defendant could and did see the lights from the drilling derricks located near the land would indicate that defendants knew of the land for oil values. No doubt the trial court could have contemplated the defendants also knew of the producing wells near the land but failed to disclose this fact to plaintiff.

■ Under all of the evidence it is conclusive that the defendants intended to and did overreach the plaintiff.

■ If on account of peculiar circumstances there is a positive duty on the part of one of the parties to a contract to speak, and he remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud. Morris v. McLendon, 167 Okl. 68, 27 P.2d 811; Barry v. Orahood, 191 Okl. 618, 132 P.2d 645.

We find and hold that the judgment of the trial court is not clearly against the weight of the evidence.

The question of whether the so-called agreement was sufficient to create a binding contract has also been briefed by all parties. However, since we have decided the case on the above theory such question is unnecessary to determine.

Judgment affirmed.

WILLIAMS, JACKSON, HODGES and McINERNEY, JJ., concur.

IRWIN, C. J., BERRY, V. C. J., and BLACKBIRD and LAVENDER, JJ., dissent.