**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 5, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BJORN MYKLATUN, an individual
residing in Oslo, Norway; OIL
INNOVATION, AS, a Norwegian
company,

      Plaintiffs - Appellants,

v.

FLOTEK INDUSTRIES, INC., a
Delaware corporation; CHEMICAL AND
EQUIPMENT SPECIALTIES, INC., an
Oklahoma Corporation; JERRY D.
DUMAS, SR., an individual residing in
Houston, Texas; JOHN TODD SANNER,
an individual residing in Duncan,
Oklahoma,

      Defendants - Appellees.

and

HALLIBURTON ENERGY SERVICES,
INC., a foreign corporation,

      Defendant.

No. 12-6148

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:09-CV-00770-F)**

---

David R. Keesling (Heidi L. Shadid with him on the briefs) of Richardson Richardson
Boudreaux Keesling, Tulsa, Oklahoma, for Plaintiffs - Appellants.

Richard C. Ford (Anton J. Rupert and Geren T. Steiner with him on the brief) of Crowe & Dunlevy, Oklahoma City, Oklahoma, for Defendants - Appellees.

Before **KELLY, McKAY,** and **MATHESON,** Circuit Judges.

**McKAY**, Circuit Judge.

Plaintiff Bjorn Myklatun and his company, Plaintiff Oil Innovation, brought claims of tortious interference, fraud, and civil conspiracy against the four Defendants involved in this appeal:  Chemical Equipment and Specialties, Inc. (CESI); its parent company, Flotek Industries; Flotek president Todd Sanner; and former Flotek CEO Jerry Dumas.[1] The district court granted partial summary judgment in favor of Defendants on the claim of tortious interference and one of Plaintiffs' two theories of fraud.  Following a nine-day trial, the jury entered a verdict in favor of all Defendants on the civil conspiracy claim. The jury also found in favor of Mr. Sanner and Mr. Dumas on the narrowed claim of fraud, but it found for Plaintiffs on the fraud claim against CESI and Flotek.  On this claim, the jury entered an actual damages verdict of $107,000 and a punitive damages award of an additional $107,000.  However, the district court granted Defendants' renewed motion for judgment as a matter of law under Rule 50(b) and entered a superceding judgment in favor of all Defendants on all claims.  Plaintiffs appeal this

---

[1] Plaintiffs also asserted claims against Halliburton Energy Services, Inc.  The claims relating to Halliburton were settled before trial and are not relevant to this appeal.

decision. They also raise various evidentiary and other challenges relating to their damages on the fraud claim, and they contend the jury's verdict on the civil conspiracy and fraud claims was facially inconsistent and requires a new trial. Because we agree with the district court that Defendants were entitled to judgment as a matter of law, we need not address these other arguments.

## I.

Defendant CESI manufactures specialty chemicals used in oil and gas production, including microemulsion products used in the water-pressure fracturing ("fracking") process. In December 2004, CESI and Mr. Myklatun entered into a distributorship agreement. Among other things, CESI agreed it "w[ould] not during the period of this Agreement enter into any agreement of a similar nature with any other concern or party to market, sell, distribute, provide or otherwise deal in the sale or provision of Product(s) competing with DISTRIBUTOR in the Territory, except with the prior written consent of DISTRIBUTOR." (Appellants' App. at 3207.) "The intent of the foregoing is that DISTRIBUTOR shall have the exclusive right to sell Product(s) to Purchasers in the Territory." (*Id.*) "Territory" is defined as "Norway, Denmark and their continental shelves. It also applies to the Norwegian Oil companies when they are conducting business outside of Norway. The territory may be extended also to include the whole North Sea and Barents Sea, if the sales in Norway is [sic] successful." (*Id.* at 3209.) An appendix to the agreement defines the covered products: "Initially, this agreement covers the products related to the CESI Chemical Microemulsion Additive (MA) series. This

includes [five specified products.] This agreement also applies to any MA products that are formulated and/or renamed for drilling applications." (*Id.* at 3211.) A 2005 amendment to the agreement changes the definition of "Territory" somewhat:

> The Territory is oil companies active in Norway, Denmark and their Continental Shelves. It also applies to Norwegian and Danish Oil companies conducting business outside the Territory.* The Distributor has an option to extend the Territory to include other Oil companies active in the North Sea, the Barents Region and the Irish Sea if the 2 first commercial years are successful. *with the prior written approval of CESI Chemical.

*(Id.* at 3213.)

Although the distributorship agreement covered more than one microemulsion product, CESI and/or Mr. Myklatun decided that Plaintiffs' efforts would be focused, at least initially, on a product called MAD-4. Plaintiffs began marketing and seeking environmental approval of MAD-4 in Norway and Denmark. Although Defendants dispute whether Plaintiffs obtained valid environmental approval, the facts taken in the light most favorable to Plaintiffs indicate they were successful, at least in Norway. However, Plaintiffs had made no sales of MAD-4 by October 2006, when Defendants informed them they were terminating and/or not renewing the distributorship agreement.

While the distributorship agreement with Mr. Myklatun was in force, CESI began developing a proprietary microemulsion product for Haliburton Energy Services. Although the Halliburton microemulsion, GasPerm 1000, was specifically designed to meet United States drinking water standards, Halliburton's master purchase agreement with CESI had a global reach. However, Halliburton did not sell any GasPerm 1000 in

-4-

the North Sea until 2008, and then only in the United Kingdom sector, not in Norway or Denmark. Nor has CESI ever sold any microemulsion products in Norway or Denmark.

In December 2006, CESI filed a petition for declaratory judgment against Mr. Myklatun in Oklahoma state court, requesting a finding as to whether Mr. Myklatun had received public approval of MAD-4 in the North Sea region. Mr. Myklatun filed a breach of contract counterclaim in the state court action. Plaintiffs subsequently filed the instant federal action, raising related claims of fraud, civil conspiracy, and tortious interference. Plaintiffs' fraud claim had two parts: (1) Defendants "willfully and knowingly allowing the Plaintiffs to incur significant time and expense during the completion of their contract, when these Defendants eventually determined that CESI would not comply with the contract under false premises in order that Flotek and CESI could cater to their major client, Halliburton"; and (2) Defendants "engaged in further fraudulent conduct by devising and developing the microemulsion product GasPerm-1000, in a blatant attempt to circumvent Plaintiffs' contract with CESI," and "this conduct was concealed to the Plaintiffs with the intent by these Defendants to deceive Plaintiffs." (*Id.* at 553-54.) The district court concluded that the first part of the fraud claim, as well as Plaintiffs' claim of tortious interference, was barred by the statute of limitations. After the court granted partial summary judgment in favor of Defendants on these claims, the case proceeded to trial on (1) the claim of civil conspiracy, and (2) the narrow claim of fraud based on Defendants' "devising and developing the microemulsion product GasPerm-1000, in a blatant attempt to circumvent Plaintiffs' contract with CESI." (*Id.* at 554.)

-5-

At the conclusion of Plaintiffs' evidence, Defendants made an oral Rule 50(a) motion for judgment as a matter of law on several grounds. The court took the motion under advisement. The jury subsequently entered a verdict in favor of Defendants except as to Plaintiffs' fraud claim against CESI and Flotek. Defendants then renewed their motion for judgment as a matter of law by filing a Rule 50(b) motion arguing, among other things, they could not be held liable for fraud because there was no evidence they made any actual misrepresentations to Plaintiffs and the evidence did not support the conclusion they had a duty to disclose their development of GasPerm 1000 to Plaintiffs. In response, Plaintiffs argued the jury could find a duty to disclose based on the contractual exclusivity provision and Defendants' "half-truths." (*Id.* at 3522.) The district court granted Defendants' motion, concluding the evidence was insufficient to permit reasonable jurors to find by clear and convincing evidence that Defendants had a duty to disclose the development of GasPerm 1000. Plaintiffs then filed a motion for a new trial in which they argued, inter alia, that the district court should not have granted Defendants' Rule 50(b) motion as to CESI because the initial Rule 50(a) motion did not discuss the duty to disclose on the part of CESI. The district court rejected this argument, holding (1) the argument was waived because Plaintiffs did not object on this ground in their response to the Rule 50(b) motion, and (2) the Rule 50(a) motion sufficiently raised this issue to put the court on notice of CESI's position. The court also rejected all of Plaintiffs' other arguments for reconsideration and for a new trial. This appeal followed.

We review de novo the district court's ruling on Defendants' Rule 50 motion, applying the same standard as the district court. *See Wolfgang v. Mid-Am. Motorsports, Inc.*, 111 F.3d 1515, 1522 (10th Cir. 1997). Under this standard, "we must determine whether there is evidence upon which the jury could have properly found a verdict for the nonmoving party." *Id.* In making this determination, we view the evidence and the inferences to be drawn therefrom in the light most favorable to the jury's verdict. *Id.* "In diversity cases, federal law governs the appropriateness of a Rule 50 motion, while the substantive law of the forum state controls the analysis of the underlying claims." *Id.*

We first address Plaintiffs' argument that the district court erred in granting judgment as a matter of law in favor of Defendant CESI because CESI was not included in Defendants' Rule 50(a) motion made during the trial and was not specifically mentioned in Defendants' post-trial Rule 50(b) motion. Our review of the record persuades us that both Rule 50 motions were made on behalf of all Defendants, including CESI. To the extent Plaintiffs are challenging the specificity of Defendants' Rule 50(a) motion with respect to each Defendant's potential duty to disclose, we agree with the district court that this argument was waived by Plaintiffs' failure to raise it in their response to Defendants' Rule 50(b) motion. *See Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 87 (2d Cir. 1998) ("[W]hen the party moving for [judgment as a matter of law] fails to articulate its motion with sufficient specificity, the non-moving party must object in order to preserve the issue for appeal."); *United States ex rel. Maris Equip. Co. v. Morganti,*

*Inc.*, 163 F. Supp. 2d 174, 181 (E.D.N.Y. 2001) ("While the specificity requirement is obligatory, the burden is upon the nonmoving party to raise the issue; otherwise, it is waived.").

We turn then to the merits of Defendants' argument that Plaintiffs failed to present evidence of any affirmative misrepresentations or facts giving rise to a duty to disclose. The parties agree that we look to Oklahoma law to determine whether Plaintiffs presented sufficient evidence to support the jury's finding of fraud.

On appeal, Plaintiffs do not contend they presented any evidence of an affirmative misrepresentation. Rather, they argue their fraud claim is based on Defendants' "omissions or failures to speak, i.e. constructive fraud." (Appellants' Opening Br. at 12.) "As specifically relevant here, constructive fraud is the concealment of material facts which one is bound under the circumstances to disclose." *Specialty Beverages, LLC v. Pabst Brewing Co.*, 537 F.3d 1165, 1180 (10th Cir. 2008) (internal quotation marks and brackets omitted) (applying Oklahoma law). "In determining whether there is a duty to speak consideration must be given to the situation of the parties, the matters with which they are dealing, and the subject matter in hand." *Barry v. Orahood*, 132 P.2d 645, 647 (Okla. 1942). A duty to disclose may arise from a fiduciary or agency relationship between the parties. *See S.E.C. v. Cochran*, 214 F.3d 1261, 1265 (10th Cir. 2000) (applying Oklahoma law). "Even absent a fiduciary relationship, the relation of the parties, the nature of the subject matter of the contract or the peculiar circumstances of each particular case[] may be such as to impose a legal or equitable duty to disclose all

material facts." *Id.* (internal quotation marks and brackets omitted). For example, the duty to disclose "may arise from partial disclosure, the speaker being under a duty to say nothing or to tell the whole truth." *Varn v. Maloney*, 516 P.2d 1328, 1332 (Okla. 1973) (quoting *Deardorft v. Rosenbusch*, 206 P.2d 996, 998 (Okla. 1949)). "One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth." *Id.*

Plaintiffs allege Defendants had a duty to disclose their development of GasPerm 1000 based on the following facts: (1) the distributorship agreement gave Mr. Myklatun exclusive distribution rights within the contractual territory, while GasPerm 1000 was a potentially competing product that Halliburton could sell globally; (2) Defendants "knew [Mr. Myklatun] was under the impression he had exclusivity" (Appellants' Opening Br. at 14); (3) Defendants "secretly worked with their chemical supplier and an environmental consultant to achieve environmental approval of GasPerm 1000 in the North Sea areas, surrounding and including Plaintiffs' exclusive area" (*id.* at 15); (4) Defendants "state[d] that CESI was seeking public approval of MAD-4 in Holland *to help Plaintiffs*" (*id.*); and (5) "[d]espite the exclusivity given to Plaintiffs and the discussion and approval of MAD-4 in the other North Sea areas, Defendants never disclosed the efforts to gain North Sea approval of GasPerm 1000 or even disclosed the existence of another microemulsion that was covered by Plaintiffs' exclusive Distributor Agreement" (*id.*). After carefully reviewing the record, we conclude that none of these facts gave rise to a duty for

Defendants to disclose their development of GasPerm 1000.

First, contrary to Plaintiffs' contentions, the contractual exclusivity provision did not expressly require Defendants to disclose their development of any global products that could potentially compete within Plaintiffs' territory. Nor did the distributorship agreement or any of the dealings between the parties establish a fiduciary or agency relationship between them. Rather, the agreement expressly provides that "[t]he relationship between [Plaintiffs] and CESI is solely that of buyer and seller," and "[n]either party is in any way whatsoever the legal representative or agent of the other." (Appellants' App. at 3207.) Likewise, all of the evidence introduced at trial indicated that the parties had an arms-length commercial relationship, not a fiduciary relationship or other type of special relationship that would give rise to a duty to disclose. *Cf. Devery Implement Co. v. JI Case Co.*, 944 F.2d 724, 729-31 (10th Cir. 1991) (concluding that Oklahoma courts would not extend fiduciary duties based on a dealership agreement alone, even where the record contained "evidence of concerted action in marketing, training, and financing"). In essence, Plaintiffs are contending that a manufacturer has a generalized duty to disclose all planning and development activities that could potentially affect a current distributor. However, we conclude that neither the contract between the parties nor Oklahoma law imposes such an obligation. *Cf. AKA Distributing Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1085, 1087 (8th Cir. 1998) (holding a distributor could not pursue a fraud claim against a manufacturer for "concealing its secret plan to manufacture private label cleaners for Sears" while using the distributor's engineering

-10-

skills to develop its products, since the manufacturer "had no duty to disclose to arms-length distributors its unrelated plans to market private label products"). As for Plaintiffs' argument that the exclusivity provision gave rise to at least an implicit duty to disclose any actions that might potentially result in a breach of this provision, we are not persuaded that Oklahoma law will find a constructive fraud claim to arise whenever a party to a contract fails to disclose that it is taking actions that could potentially result in a future breach. In the absence of any "peculiar circumstances" giving rise to a duty to disclose, *see Barry*, 132 P.2d at 647, the proper remedy for a breach of contract will be found in a breach of contract claim, not in a claim of fraud based on the breaching party's failure to disclose its potential future breach. And we are not persuaded that a contractual promise of regional exclusivity constitutes "peculiar circumstances" giving rise to a tort duty to disclose the development of all potentially infringing products.

We likewise conclude that Defendants' knowledge that Mr. Myklatun "was under the impression he had exclusivity" (Appellants' Opening Br. at 14) did not give rise to a duty to disclose their development of GasPerm 1000. First, for the reasons explained above, we are not persuaded that Oklahoma law will impose on a manufacturer a duty to disclose its development of all potentially competing products whenever a distributor has been contractually promised regional exclusivity. Second, mere knowledge of another party's "impression" is not in itself a partial disclosure that gives rise to a duty to disclose the whole truth. And finally, while Defendants' development of GasPerm 1000 raised the possibility that a competing product could potentially infringe on Plaintiffs' regional

-11-

exclusivity rights in the future, no GasPerm 1000 was actually sold in the North Sea area

until 2008, well after the distributorship agreement had been terminated, and then only in

the United Kingdom sector.[2]  Thus, any statements or representations regarding Plaintiffs'

regional exclusivity have not been shown to be false or half-true.

Finally, we are not persuaded that Defendants' efforts to obtain environmental

approval of GasPerm 1000 gave rise to a duty to disclose, either alone or in conjunction

with Defendants' "statement that CESI was seeking public approval of MAD-4 in

Holland *to help Plaintiffs.*"  (*Id.* at 15.)  Defendants' actions in seeking public approval of

GasPerm 1000 did not constitute any kind of disclosure to Plaintiffs, whether partially

true or otherwise, and Plaintiffs have not shown any basis under Oklahoma law for

finding such actions to constitute fraudulent misrepresentations.  As for Defendants'

statement that they were seeking to obtain approval for MAD-4 in Holland for Plaintiffs'

benefit, Plaintiffs point to no evidence suggesting this statement was untrue.  In their

opening brief, Plaintiffs suggested this statement was a half-truth because Defendants

concealed the fact they had also developed and were seeking North Sea approval of

---

[2] At trial, Plaintiffs contended that Defendants breached the contract by terminating it prematurely in October 2006 and that the contract should still have been in force in 2008 when Halliburton sold a microemulsion product in the U.K. sector of the North Sea.  However, whatever the merits of this contention, it does not prove that Plaintiffs' "impression [they] had exclusivity" (Appellants' Opening Br. at 14) was wholly or partially untrue in 2005 and 2006, the time period in which the fraud allegedly occurred.  Plaintiffs have simply not shown that Defendants told a half-truth regarding exclusivity that gave rise to a duty to disclose.  Again, the remedy for an alleged breach of contract will generally be found in a breach of contract claim, not in a claim for fraud based on silence regarding actions that could potentially lead to a future breach.

GasPerm 1000. At oral argument, Plaintiffs further asserted Defendants' statement was actually entirely false, since Defendants were not seeking to get MAD-4 approved in Holland at all, but only made that representation in an attempt to obtain Plaintiffs' MAD-4 test results so they could use these test results in their efforts to seek approval of their related GasPerm 1000 product. However, Plaintiffs have cited to no evidence to support this assertion, nor have we found any such evidence in our own review of the record. To the contrary, the evidence introduced at trial instead indicates Defendants had serious reservations about the validity of Plaintiffs' test results and were intentionally keeping the GasPerm 1000 approval process separate from the contested MAD-4 approval. Any possible link between the MAD-4 and GasPerm 1000 approval processes was far too attenuated to cause Defendants' statement about MAD-4 approval to give rise to a duty to disclose their separate attempts to obtain approval of a different product. We thus conclude that Plaintiffs have not pointed to any half-truths or partial disclosures that would give rise to a duty to disclose under Oklahoma law.

Some of Defendants' actions in this case might well have given rise to a claim of breach of contract. However, that is not the theory Plaintiffs pursued in this litigation. Rather, they contended Defendants committed fraud by failing to disclose their development of a potentially competing global product while they had an exclusive regional distributorship agreement with Plaintiffs. After carefully reviewing the record in this case, we conclude the evidence is insufficient to support the conclusion that Defendants had the duty to make such a disclosure under Oklahoma law. We therefore

-13-

affirm the district court's grant of Defendants' Rule 50 motion for judgment as a matter of law.

Our affirmance on this ground moots Plaintiffs' other arguments regarding the district court's evidentiary rulings, its decisions regarding damages, and the alleged inconsistency in the jury verdict. We therefore do not address any of these other arguments.

**III.**

For the foregoing reasons, we **AFFIRM** the district court's entry of judgment as a matter of law in favor of Defendants.