**MORRIS et ux. v. McLENDON et al.**

No. 21073. Nov. 21, 1933.

Rehearing Denied Dec. 19, 1933.

Utterback & Stinson, for plaintiffs in error.

John Head, for defendant in error.

OSBORN, J. This action was filed in the district court of McCurtain county by Mrs. Sue B. Morris and her husband, H. C. Morris, against Mrs. Maggie McLendon and her husband, Jeff D. McLendon, as an action for damages. The cause went to trial before a jury, and after the introduction of all the evidence, the trial court sustained a motion of defendants for a directed verdict, from which order plaintiffs have appealed. The parties will be referred to as they appeared in the trial court.

Plaintiffs were the owners of certain residence property in the town of Idabel, which was in the process of foreclosure by the McCurtain County Building & Loan Association; said property was advertised for sale under said foreclosure, the date of said sale being July 18, 1927, at 10:00 o'clock a. m. The plaintiff H. C. Morris, who lived at Durant, Okla., and defendant Jeff D. McLendon, who lived at Idabel, Okla., had been negotiating with reference to the purchase of plaintiff's equity in said property, and on July 15, 1927, defendant called plaintiff by telephone and offered $700 for plaintiff's equity in the property, which offer was accepted. It was agreed that plaintiffs were to execute a deed to the defendant Mrs. Maggie McLendon and attach thereto a draft and mail said papers to the Idabel National Bank. The deed was executed and the draft prepared and deposited at the Durant National Bank on Saturday morning, July 16, 1927, with directions to transmit the same immediately to the bank at Idabel.

Plaintiff H. C. Morris testified that, in discussing the matter over the telephone, he inquired about the sale which was set for the following Monday, and defendant told him that he would stop the sale and that it would be unnecessary for plaintiff Morris to come to Idabel to attend the sale and protect his interests in the property.

Defendant Jeff D. McLendon testified that he called at the Idabel National Bank on Saturday, July 16, 1927, and was informed that the deed had not arrived, and on Monday morning, the date of the sale, made several trips to the bank and was informed that the deed had not yet arrived, and as an extra precaution inquired at another bank and was there informed that the papers had not arrived from Durant.

It is shown that there was some delay, through no fault of plaintiff, in mailing the papers by the Durant National Bank and they were not mailed until Monday, the day of the sale, and for some reason were not received at Idabel until several days later.

The sale was had at the time specified in the notice, and B. R. McLendon, son of the defendants, at the direction of Jeff D. McLendon, attended the sale and bid the property in in the name of defendant Mrs. Maggie McLendon. Thereafter the sale was confirmed and sheriff's deed issued to her. The amount paid was approximately the amount of the mortgage indebtedness, which was $675 less than its appraised value. In view of the contractual arrangements between the parties, it might be said that the price paid was approximately $700 less than its actual value.

The plaintiff's cause of action is based upon the representation by defendant that he would stop the sale, and by reason of said representation, plaintiff was induced not to attend the sale and thereby defendant was able to purchase the property for a price approximately $700 less than its actual value, and that except for such false and fraudulent representation, plaintiff would have attended the sale and could and would have thereby protected his equity in the property. Plaintiff's prayer is for $700

damages based upon the fraud of defendant.

The courts have carefully refrained from laying down a definition which might limit the meaning of the term "'fraud." This policy of the courts is very well stated in the case of Hawkins v. Bryan, 128 Okla. 27, 261 P. 167, as follows:

"Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise, and are resorted to by one individual to get an advantage over another by false suggestions or by the suppression of the truth. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated. Van Winkle v. Henkle, 77 Okla. 34, 186 P. 942."

Section 9418, O. S. 1931, provides in part as follows:

"Constructive fraud consists:

"First: In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to prejudice of any one claiming under him; or * * *"

Since the issue of fraud is generally an issue of fact, it is only where there is an entire absence of proof of fraud that the court is justified in taking the case from the jury and directing a verdict. In the case of Anderson v. Whitner, 127 Okla. 284, 261 P. 156, it is said:

"It is only when the evidence, with all the inferences the jury could justifiably draw from it, will be insufficient to support a verdict for plaintiff that the court is authorized to direct a verdict for the defendant; and, unless the conclusion follows, as a matter of law, that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury under proper instructions."

In the case of Marland Refining Co. v. Duffy, 94 Okla. 16, 220 P. 846, it is said:

"Where the evidence is conflicting and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving for consideration that evidence only which is favorable to the party against whom the motion is leveled."

See, also, Cochran v. Davis, 118 Okla. 135, 247 P. 65; Midland Valley R. Co. v. Gibson, 94 Okla. 193, 221 P. 100; Kramer v. Nichols-Chandler Home Building & Brokerage Co., 93 Okla. 227, 220 P. 338; Eastman National Bank v. Hertzler, 100 Okla. 182, 229 P. 249; Smith v. Rocket, 79 Okla. 244, 192 P. 691; Okla. Automobile Co. v. Goulding, 73 Okla. 292, 176 P. 400; Phinnie v. Atkinson, 72 Okla. 1, 177 P. 111; Midland Valley R. Co. v. Rippe, 61 Okla. 314, 161 P. 233; Sartain v. Walker, 60 Okla. 258, 159 P. 1096.

The trial court found that there was not sufficient evidence of fraud to go to the jury. With such finding, we cannot agree. Viewing the testimony in the light most favorable to plaintiff, in accord with the above rules, it appears that there was a plain and positive assurance on the part of the defendant to plaintiff that the sale would be stopped, and that it was unnecessary for plaintiff to be present in Idabel at the time of the sale. Plaintiff relied upon said representation. The sale was not stopped, but was allowed to proceed, and the result thereof was the enrichment of defendant in the sum of approximately $700 and the consequent loss to plaintiff in the same amount. Defendant contends that he could not stop the sale, or would not be justified in so doing, since the deed had not arrived prior to the sale. The fact that said deed did not arrive was not known to plaintiff in time to stop the sale, but was known by defendant. The towns of Idabel and Durant are less than 100 miles apart. Communication by telephone or telegraph could have easily been had. Although the deed did not arrive before the sale, the jury might have concluded that it was a positive duty on the part of the defendant to notify plaintiff in time to allow him to attend the sale, since plaintiff relied upon the assurance of defendant that the sale would be stopped, or that defendant would purchase at the agreed price. The plaintiff had fully performed all things required to be done by him, and although the designated agents in the channel through which said transaction was to be closed had failed to transmit said conveyance, such failure was not within the knowledge of plaintiff, but was within the knowledge of defendant. The jury might have concluded that his duty required him to speak, instead of remaining silent to his own profit. We think this brings the case within the rule that, under some circumstances, silence may constitute fraud. It was for the jury, instead of the court, to weigh the acts of the parties, their statements and relationships. The court therefore committed error in taking said cause from the jury.

The judgment of the trial court is re-

versed and the cause remanded, with directions to grant a new trial.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, and BUSBY, JJ., concur. WELCH, J., disqualified.