2013 OK 34

**Charles D. CROSLIN, Glenn Croslin, and Irma Jean Gowin, Plaintiffs/Appellees,**

v.

**ENERLEX, INC., Defendant/Appellant.**

No. 109,786.

Supreme Court of Oklahoma.

May 28, 2013.

Rehearing Denied Aug. 7, 2013.

John L. Randolph, Jr., Tulsa, Oklahoma, for defendant/appellant.

Matthew H. McBee, Poteau, Oklahoma, for plaintiffs/appellees.

TAYLOR, J.

¶1 Charles D. Croslin,[1] Glenn Croslin, and Irma Jean Gowin (plaintiffs) sued Enerlex, Inc. (defendant) seeking rescission of mineral deeds and tort damages. The dispositive issues on certiorari are: 1) whether the summary judgment record on appeal establishes that defendant owed the plaintiffs a duty to disclose the pooling order and the accrued mineral proceeds when it made an unsolicited offer to purchase their undivided mineral interest in Seminole County and provided the mineral deeds to be executed, and if so, 2) whether rescission of the mineral deeds is a remedy for defendant's breach of the disclosure duty. We hold the defendant owed a duty to disclose the accrued mineral proceeds to the plaintiffs when it offered to purchase the mineral interest and provided the mineral deeds conveying the mineral interest and assigning the accrued mineral proceeds, if any. We further hold rescission is an appropriate remedy in this case for the breach of defendant's disclosure duty.

## I. Facts and Procedural Background

¶2 The following facts are undisputed. W.M. Croslin owned a four net acre mineral interest in Seminole County, Oklahoma. W.M. Croslin died on September 24, 1994, survived by his wife, Goldie A. Croslin, and his children, the plaintiffs. W.M. Croslin's unleased mineral interest was included in an Oklahoma Corporation Commission pooling order in Cause CD No. 200002499–T, Order No. 442715, dated July 11, 2000. Goldie A. Croslin died on November 30, 2005, survived by her children, the plaintiffs. In early 2008, nearly $10,000.00 had accrued from the production of the unleased mineral interest under the pooling order and had been reported and transmitted to the State of Oklahoma for the benefit of W.M. Croslin pursuant to the statutory custodial taking of proceeds from pooled mineral interests owned by unknown or unlocated persons. 52 O.S.2001, § 551, et seq. The plaintiffs are the heirs of W.M. Croslin, deceased, and Goldie A. Croslin, deceased.

¶3 Defendant is in the business of buying mineral interests. In March of 2008, defendant made unsolicited offers to the plaintiffs to buy their Seminole County mineral interest. When it made the offers, defendant knew that the mineral interest was included in an Oklahoma Corporation Commission pooling order; that the pooling order listed W.M. Croslin as a party with an unknown address; that the pooling order allowed W.M. Croslin a $75.00 per acre bonus and a 1/8th royalty; and that $9,961.71 had been reported and transmitted for the benefit of W.M. Croslin to the Oklahoma Corporation Commission pursuant to the pooling order and 52 O.S.2001, § 552.[2]

¶4 Defendant sent an offer letter to each plaintiff dated March 21, 2008, advising that it was "purchasing mineral interests in Seminole County, Oklahoma" and that "we believe you own" a mineral interest in Seminole County. The letter also advised that two bank drafts totaling $1,350.00,[3] a mineral deed, and a self-addressed envelope were enclosed; that "when the Mineral Deed has been received by our office, we will begin our title examination"; and that the drafts will "be paid upon completion of the title examination." In making the offers, defendant did not disclose to any of the plaintiffs the existence of the pooling order or the accrued mineral proceeds held by the State Treasurer.

¶5 The granting clause in defendant's mineral deed conveyed, transferred, assigned, and delivered the "interest in and to all of the Oil, Gas, and any other classification of valuable substance . . . in and under and **that**

---

1. According to the Suggestion of Death filed November 1, 2010 in the district court, Charles D. Croslin died on September 1, 2010, during the pendency of this action.

2. Pursuant to 52 O.S.2001, § 552, the undistributed mineral interest proceeds were reported and transmitted to the Oklahoma Corporation Commission, deposited in the Mineral Owner's Escrow Fund, and then, pursuant to 52

O.S.Supp.2003, § 554, the funds were transferred to the Mineral Owner's Fund in the State Treasury.

3. Defendant sent a bank draft in the amount of $250.00 marked "CONSIDERATION FOR: Signature Fees" and a bank draft in the amount of $1,100.00 offered to each of the plaintiffs as the purchase price of the undivided mineral interest.

may be produced from the following described lands...." (Bold added.) The language that followed the granting clause explained its meaning:

> it being understood and agreed that this transfer and assignment covers and **includes** that the grantee shall have, receive, and enjoy the herein granted undivided interests in and to **all royalties, accruals and other benefits, if any, from all Oil and Gas heretofore or hereafter run,** whether they be held therefore by any purchaser or other legal entity, or hereafter produced, sold and paid to the Grantee. The Grantor hereby irrevocably appoints and constitutes the Grantee as agent and attorney-in-fact for the limited purpose only of executing division and transfer orders and all other instruments necessary to make fully effective this assignment and conveyance so that the Grantee may act in Grantor's place and stead for such purpose.(Bold added.)

Without knowledge of the pooling order or the accrued mineral proceeds held by the State Treasurer for the benefit of W.M. Croslin, plaintiffs executed defendant's mineral deeds on March 31, 2008.[4]

¶ 6 Subsequently, plaintiffs discovered the pooling order and the accrued mineral proceeds, and on October 23, 2009, they filed suit against defendant. In addition to the above undisputed facts, plaintiffs alleged that defendant had a duty to inform them of the pooling order, the accrued mineral proceeds, and the production; that defendant's failure to inform them constituted constructive fraud; and that defendant's deceitful and fraudulent actions amount to fraud and justifies rescission, consequential damages, actual damages, and punitive damages. Defendant answered and counter-claimed that it was the rightful owner of the mineral interests and that the plaintiffs filed suit in bad faith and slandered the title of the mineral interest.

¶ 7 Plaintiffs moved for summary judgment. The trial court granted partial summary judgment in favor of plaintiffs on the false representation claim and ordered an accounting of royalty proceeds paid to defendant, leaving other issues unresolved. The parties agreed to the accounting and waived all other claims and issues for purposes of summary judgment, and the trial court entered the summary judgment order on appeal. The trial court concluded that: 1) a mineral interest purchaser has the duty to disclose production and failure to do so is a false representation, citing *Deardorf v. Rosenbusch*, 1949 OK 117, 201 Okla. 420, 206 P.2d 996; 2) a seller's constructive knowledge of production is not a defense to fraudulent misrepresentation, citing *Uptegraft v. Dome Petroleum Corp.*, 1988 OK 129, 764 P.2d 1350; and 3) the unclaimed property statutes and regulations place additional notice requirements upon one who claims funds in the Mineral Owners Escrow Fund based upon the transfer of a mineral interest. The trial court granted plaintiffs' claim for rescission and cancelled the mineral deeds, declared plaintiffs to be the rightful owners of the mineral interest, and directed plaintiffs to return the purchase money defendant paid them less any royalty proceeds that may have been paid to defendant.

¶ 8 Defendant appealed. The Court of Civil Appeals reversed the summary judgment finding that defendant made no factual inducement, representation or misrepresentation that gave rise to a duty to disclose the pooled mineral interest or production and that defendant had no duty to disclose the pooled mineral interest and accrued mineral proceeds to the plaintiffs under the unclaimed property statutes or the pooled mineral interests statutes. We previously granted plaintiffs' petition for certiorari review to resolve the conflict between the Court of Civil Appeals opinion herein and two other opinions by the Court of Civil Appeals.[5]

---

4. In 2008, the plaintiffs' ages were 69, 70, and 77 years. Two of the plaintiffs executed the mineral deeds in Oklahoma County, Oklahoma, and one plaintiff executed the mineral deed in Bowie County, Texas. Two plaintiffs signed affidavits stating they would not have signed the mineral

deeds if they had knowledge of the production and accrued mineral proceeds.

5. The Court of Civil Appeals opinions in *Harbour Mineral Properties v. Pence*, No. 108,822, and *Livingston, et al. v. TOP, LLC*, No. 108,425, are in conflict with the Court of Civil Appeals opin-

## II. Standard of Review

■ ¶ 9 Plaintiffs based their equitable claim of constructive fraud and rescission of the mineral deeds and their tort claim of deceit and fraud and damages on one set of undisputed facts. Plaintiffs contended the undisputed facts clearly showed the defendant misrepresented material facts, the misrepresentation gave rise to a legal obligation to disclose all material facts about the mineral interest, and defendant's failure to disclose all material facts constituted deceit and fraud and constructive fraud. At issue is the trial court's legal conclusion drawn from the undisputed facts that the mineral interest purchaser had a duty to disclose production to the mineral interest owners. This question as to the legal effect of the undisputed facts challenges plaintiffs' entitlement to summary judgment as a matter of law on the constructive fraud claim. *D–Mil Production, Inc. v. DKMT, Co.*, 2011 OK 55, ¶ 12, 260 P.3d 1262, 1267. The summary judgment resolved questions of law which we review *de novo*, without deference to the trial court. *Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47.

■ ¶ 10 The trial court's grant of plaintiffs' claim for rescission and cancellation of the mineral deed is governed by principles of equity. *Goldsby v. Juricek*, 1965 OK 101, 403 P.2d 454, 456. Equity will cancel a deed where it is clear that an alleged false repre-

sentation deceived the complainant and caused injury. *Mobil Oil Corporation v. Flag–Redfern Oil Co.*, 1973 OK CIV APP 5, 522 P.2d 651 (Approved for publication by the Supreme Court). On appellate review, the decision of a court in equity will not be reversed unless it is clearly against the weight of the evidence. *Smith v. Marshall Oil Corp.*, 2004 OK 10, 85 P.3d 830.

## III. Fraud and the Disclosure Duty

■ ¶ 11 This Court has often said that fraud is a generic term embracing the multifarious means which human ingenuity can devise so one can get advantage over another by false suggestion or suppression of the truth. *Morris v. McLendon*, 1933 OK 619, ¶ 8, 167 Okla. 68, 27 P.2d 811, 812; *Johnson v. McDonald*, 1934 OK 743, 170 Okla. 117, 39 P.2d 150; *Singleton v. LePak*, 1967 OK 37, ¶ 13, 425 P.2d 974, 978. When fraud is alleged, every fact or circumstance from which a legal inference of fraud may be drawn is admissible. *Berry v. Stevens*, 1934 OK 167, ¶ 16, 168 Okla. 124, 31 P.2d 950, 955; *Silk v. Phillips Petroleum Co.*, 1988 OK 93, ¶ 33, 760 P.2d 174, 179.

■ ¶ 12 Actual fraud [6] is the intentional misrepresentation or concealment of a material fact, with an intent to deceive, which substantially affects another person, while constructive fraud [7] is a breach of a legal or

ion in this case. The controversies in *Harbour Mineral* and *Livingston* arose out of circumstances similar to the circumstances in this case. The buyers made unsolicited offers to buy mineral interests in Coal County knowing that the mineral interests were subject to pooling orders, that mineral proceeds had accrued under the pooling orders, that the proceeds had been transmitted to the State, and that the sellers were unaware of these material facts; and the sellers testified that they would not have sold their mineral interests had they been aware of the material facts. Both opinions concluded that *Deardorf v. Rosenbusch* imposed a duty upon the buyers to disclose material facts regarding production and accrued mineral proceeds when making the offers to purchase the mineral interests. The *Harbor Minerals* and *Livingston* opinions are consistent with today's opinion.

6. 15 O.S.2001, § 58, now 15 O.S.2011, § 58, defines actual fraud:

Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his

connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.

2. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true.

3. The suppression of that which is true, by one having knowledge or belief of the fact.

4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive.

7. 15 O.S.2001, § 59, now 15 O.S.2011, § 59, defines constructive fraud:

Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,

equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose. *Morris v. McLendon,* 1933 OK 619, 167 Okla. 68, 27 P.2d 811; *Faulkenberry v. Kansas City Southern Ry. Co.,* 1979 OK 142, ¶ 4, 602 P.2d 203, 206. The issue of fraud is generally an question of fact. *Morris v. McLendon,* 1933 OK 619 at ¶ 10, 27 P.2d at 812. Although actual fraud must be proved at law,[8] in equity it suffices to show facts and circumstances from which it may be inferred. *Bloch v. Morgan,* 1926 OK 163, 116 Okla. 199, 244 P. 176; *Singleton v. LePak,* 1967 OK 37 at ¶ 13, 425 P.2d at 978. Constructive fraud has the same legal consequence as actual fraud. *Faulkenberry v. Kansas City Southern Ry. Co.,* 1979 OK 142 at ¶ 4, 602 P.2d at 206. Constructive fraud 1) may be based on a negligent misrepresentation or an innocent misrepresentation where there is an underlying right to be correctly informed of the facts, 2) may be based on the silence by one who has a duty to speak, or 3) may be invoked to prevent harm or to extend protection to recognized public interests. *Id.* at ¶ 4 and n. 6.

¶ 13 Here, the trial court determined defendant was guilty of constructive fraud when it granted plaintiffs' plea for rescission and canceled the mineral deeds based on its legal conclusion that defendant owed plaintiffs a duty to disclose production and the failure to do so was a false misrepresentation, citing *Deardorf v. Rosenbusch,* 1949 OK 117, 201 Okla. 420, 206 P.2d 996. Plaintiffs' petition for writ of certiorari argued that the Court of Civil Appeals failed to follow *Deardorf.*

¶ 14 In *Deardorf,* Ms. Rosenbusch, residing in the Washington D.C. area, invested $350.00 in a non-producing one mineral acre in Oklahoma in 1934. In 1944 there was a producing well on the premises and Deardorf made an unsolicited written offer to buy Rosenbusch's mineral interest for $10.00. Deardorf's offer explained that he was trying to clear title to the farm for a client. Deardorf knew there was production but did not disclose that fact to Rosenbusch. Rosenbusch, eighty years of age and with little oil and gas experience, responded to Deardorf that the offer was so little for her $350.00 investment; however, she signed the quitclaim deed that Deardorf sent her and returned it for the $10.00 offer. Subsequently, a remote grantee sued Rosenbusch in a quiet title action. Rosenbusch filed a cross petition against Deardorf alleging fraud and seeking recovery of the reasonable value of the mineral interest.

¶ 15 The *Deardorf* opinion found that the offer to buy the mineral interest, as a whole, was fraudulent because it created a false impression that there was no production of minerals from the land:

In the opinion of this court, to confirm as true another's false impression concerning a material fact is no less a false representation of such fact than if made directly in order to create the false impression. The fact that there was production was the moving cause of defendant's seeking the conveyance. The absence of plaintiff's knowledge of the production was relied on as an inducement to plaintiff's executing the conveyance for a nominal consideration. There is no need to weigh the value of each of the several statements in the letter when it is manifest that the letter as a whole is expressive of a scheme to capitalize on the ignorance of another.

1949 OK 117 at ¶ 6, 206 P.2d at 998. Guided by *Berry v. Stevens,* 1934 OK 167, 168 Okla. 124, 31 P.2d 950, *Deardorf* determined that defendant's duty to disclose the truth arose at the beginning of the negotiations and that defendant failed to disclose the truth.

Instead of disclosing the truth of there being production the same was sought to be concealed from the plaintiff by indirectly if not directly creating the belief if it did not exist, or confirming as true, if it did exist, plaintiff's belief that the land was nonproductive. The holding of the trial

---

2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

8. 15 O.S.2001, § 60, now 15 O.S.2011, § 60 provides: "Actual fraud is always a question of fact."

court that the deed was obtained by fraud finds full support in the evidence.

1949 OK 117 at ¶ 9, 206 P.2d at 998.

■ ¶ 16 The principles set out in the *Deardorf* opinion are: 1) where there is no duty to speak, if a person undertakes to speak, he or she must disclose all known facts; 2) where the speaker is under a duty to say nothing or to tell the whole truth, a duty to tell the whole truth may arise from partial disclosure; and 3) one conveying a false impression by disclosing some facts and concealing others is guilty of fraud, even though the statement is true as far as it goes, the concealment is in effect a false representation that what is disclosed is the whole truth. 1949 OK 117, 201 Okla. 420, 206 P.2d 996, *Syllabus by the Court.*

■ ¶ 17 The *Deardorf* principles had been pronounced in earlier jurisprudence. Although a party may keep absolute silence and violate no rule of law or equity, and yet, if he or she volunteers to speak and to convey information which may influence the conduct of the other party, he or she is bound to disclose the whole truth. *Berry v. Stevens,* 1934 OK 167, 168 Okla. 124, 31 P.2d 950, Syllabus, No. 6. Although a party has no duty to speak, if he or she undertakes to speak, he or she must tell the truth and not suppress known facts as half truths calculated to deceive and representations literally true but used to create a false impression are false representations. *Id.* at *Syllabus,* No.7. A fiduciary relationship imposes an absolute duty to fully disclose all material facts, *Barry v. Orahood,* 1942 OK 419, ¶ 14, 191 Okla. 618, 132 P.2d 645, 647; and, where there is no fiduciary relationship, a legal or equitable duty to disclose all material facts may arise out of the situation of the parties, the nature of the subject matter of the contract, or the particular circumstances surrounding the transaction. *Id.* at ¶ 10, 132 P.2d at 647. Where the peculiar circumstances give rise to a duty on the part of one of the parties to a contract to disclose material facts and the party remains silent to his or her benefit and to the other party's detriment, the failure to speak constitutes fraud. *Morris v. McLendon,* 1933 OK 619, 167 Okla. 68, 27 P.2d 811, Syllabus, No. 2.

¶ 18 A review of the facts and circumstances in a few of this Court's constructive fraud cases involving production of minerals demonstrates the great variety of facts that may give rise to a duty to disclose material facts. In the *Berry v. Stevens* case, Berry owned an undivided 2/5 interest in 190 acres of land in Caddo County. Berry moved to Craig County and asked Stevens, a real estate agent in Caddo County, to help him sell his Caddo County property for $2,500.00. Berry knew there was production in the vicinity of his Caddo County land, but, having moved to Craig County two years earlier, he did not know of a recent deep well that was producing 1,000 barrels per day. Stevens and his son-in-law, who posed as a prospective buyer of real estate in Craig County, visited Berry in Craig County. Berry agreed to sell his Caddo County land interest for $2,200.00 but did not know that Stevens and two others were the purchasers until Stevens presented the deed to Berry. Berry signed the deed and two days later he learned of the new deep well and filed suit to rescind and cancel the deed. Concluding that half truths calculated to deceive and representations literally true but used to create false impressions are actionable, the *Berry* opinion reversed the trial court's order refusing to rescind and cancel the deed and remanded the case for new trial.

¶ 19 In another case, *Varn v. Maloney,* 1973 OK 133, 516 P.2d 1328, the operator exaggerated the mineral production to the operating agreement participants. After quoting the principle that a duty to speak may arise from partial disclosure from the *Deardorf* opinion, the *Varn* opinion concluded:

After a careful consideration of the entire record before us, we are forced to the conclusion that Varn's unqualified statements that "We are working . . . on a sandbar development that has already proven its merit" and that "Risk is minimal * * *" were false statements of material facts which, under the circumstances, amounted to fraud as defined above. We also conclude that his failure to mention the gas cap and the possible necessity of filling it with water before flood effect

would occur, as indicated by the "experience record of Shell" which was common knowledge in the area and the failure to mention the unplugged wells in the immediate area which permitted loss of water and pressure, amounted to a concealment of material facts, which he was bound under the circumstances to disclose....

1973 OK 133 at ¶ 19, 516 P.2d at 1332.

¶ 20 In another case involving several leases, *Uptegraft v. Dome Petroleum Corp.*, 1988 OK 129, 764 P.2d 1350, the plaintiffs sought rescission of a farmout agreement and lease assignments and an accounting of production. After two wells were completed, Dome Petroleum sent a letter to the plaintiffs seeking their acquiescence to a farmout agreement. The letter read in part:

Dome has recently agreed to a checkerboard Farmout to Atlas Drilling Company. A copy of the Farmout Agreement is enclosed for your review.

Advantages to Dome, and our various partners are, evaluation of production in those units Atlas drills, and protection of leases which would have expired before we could have drilled in this area.

To indicate inclusion of your working interest in the Farmout Agreement please execute two (2) copies of this letter and return them to the undersigned....

*Id.*, 1988 OK 129 at ¶ 7, 764 P.2d at 1352.

¶ 21 The *Uptegraft* opinion found the letter to be fraudulent, stating:

This communication is immutably misleading by reason of failure to inform of current production, while stating an advantage of the arrangement is evaluation of the leases by drilling. The leases had already been evaluated by drilling. Further the leases were already perpetuated by production prior to the time the farmout had been mailed to plaintiffs.

*Id.*

And, in rejecting constructive knowledge as a defense to constructive fraud, the *Uptegraft* opinion quoted an early Kansas opinion:

"The policy of the courts, is on the one hand to suppress fraud, and, on the other, not to encourage negligence and inattention to one's own interests. The rule of law is one of policy. Is it better to encourage negligence in the foolish, or fraud in the deceitful? Either course has obvious dangers. But judicial experience exemplifies that the former is the less objectionable, and hampers less the administration of pure justice. The law is not designed to protect the vigilant, or tolerably vigilant, alone, although it rather favors them, but is intended as a protection to even the foolishly credulous, as against the machinations of the designedly wicked...."

1988 OK 129 at ¶ 13, 764 P.2d at 1354, quoting *International Harvester Co. v. Franklin County Hardware Co.*, 101 Kan. 488, 167 P. 1057 (1917). *Uptegraft* concluded that Dome Petroleum was liable for its constructive fraudulent failure to fully disclose the production. The trial court judgment in favor of Dome Petroleum was reversed and the case was remanded to the trial court.

¶ 22 From the above review of Oklahoma's rich body of law dealing with mineral interests [9] and the disclosure duty underlying constructive fraud, it is clear that the principles articulated in *Deardorf v. Rosenbusch*, 1949 OK 117, 201 Okla. 420, 206 P.2d 996, are instructive here. The trial court properly followed the precedential authority of *Deardorf*.

## IV. The Purpose of the Statutory Custodial Taking of Proceeds from Pooled Mineral Interests Owned by Unknown or Unlocated Persons

¶ 23 In 1983, the Legislature provided for the safekeeping and the custodial taking of royalty, bonus payments, and other monies directed to be paid to unknown or unlocated owners under a pooling order. 1983 Okla. Sess.Laws, ch. 320, now codified at 52 O.S. 2011, §§ 551–558. The person holding such monies during the first year after the date of the pooling order must place the monies in an escrow account. *Id.* at § 552. At the end

---

**9.** The production of oil and gas in Oklahoma predates statehood (oil was first produced in Oklahoma in 1859, *Oklahoma Historical Society's Chronicles of Oklahoma*, vol. 4, p. 322, Dec. 4, 1926), and mineral interests in Oklahoma are often severed from the title to the land.

of the first year, the monies must be reported and transmitted to the Oklahoma Corporation Commission (OCC). *Id.* The OCC must place such monies in its Mineral Owners Escrow Account for deposit in the Mineral Owner's Fund in the State Treasury. *Id.* at § 553. On claims against the Mineral Owner's Fund, the State Treasurer must make payment to the rightful owners or the heirs, assigns, or devisees of the rightful owners from the Unclaimed Property Fund. *Id.* at § 554. Each calendar quarter, the State Treasurer must reimburse the Unclaimed Property Fund from the Mineral Owner's Fund. *Id.*

■ ¶ 24 The underlying purposes of the above statutory scheme are clear: It assures that mineral proceeds of unknown and unlocated property owners will be safeguarded by the oil and gas lessees, operators, purchasers, and others who hold proceeds from production, and it requires the State Treasurer to attempt to locate the rightful owners through the unclaimed property mechanisms. This Court determined in *TXO Production Corp. v. Oklahoma Corp. Comm'n*, 1992 OK 39, ¶ 8, 829 P.2d 964, 969, that the statutes providing for the custodial taking of undistributed proceeds from pooled mineral interests clearly express legislative intent "to regulate the disposition of unclaimed proceeds from forced pooled oil and gas interests where the owners cannot be located."

¶ 25 *TXO Production Corp.* also concluded that the three acts dealing with custodial taking of intangible property must be construed together—52 O.S.1991, § 551 et seq., the so-called Unclaimed Pooled Monies Act (UPMA); 60 O.S.1981, § 651 et seq., the Uniform Disposition of Unclaimed Property Act; and 60 O.S.Supp.1984, §§ 658.2–658.8, 1984 amendments to the Uniform Act.

Unless legislative intent would be violated, these three acts must be construed together to effectuate the purpose of providing for the custodial taking of unclaimed intangible property. . . .

*TXO Production Corp.*, 1992 OK 39 at ¶ 10, 829 P.2d at 970.

The legislature . . . intended to allow Oklahoma to seize unclaimed monies belonging to (a) owners of forced pooled oil and gas

interests with a last known address in Oklahoma, (b) owners with no known address where the holder is domiciled in Oklahoma, or (c) owners whose last known address is in a state with no custodial taking or escheat provisions and the holder's domicile is Oklahoma. Section 556 of the UPMA must be interpreted as allowing these monies to be subject to the provisions of both the Uniform Act and the 1984 Act

*Id.*, 1992 OK 39 at ¶ 11, 829 P.2d at 970–971. The opinion explained the custodial taking under these three statutory schemes:

The UPMA and Uniform Act are not escheat statutes. They are "custodial taking laws" which make the State custodian of proceeds from forced pooled mineral interests whose owners are unknown or cannot be located, subject to the claims of those who prove ownership or a prior right to possession. These proceeds are ultimately placed in the Unclaimed Property Fund in the state treasury in trust for the rightful owner. By taking temporary custody of the unclaimed proceeds from a private holder, Oklahoma does not divest any state with a constitutional priority claim of custody or title to the funds. The public policy supporting custodial taking by a State is superior to any claim that a private holder may assert to any unclaimed proceeds. Under today's construction proceeds from forced pooled mineral interests are brought into the custody of the State Treasurer where mechanisms are available through the Uniform Act (a) for locating the rightful owners and allowing them to assert their claim administratively as well as in our courts, and (b) for exchanging information with other states needed to enable another state to audit or otherwise determine the unclaimed proceeds which it may be entitled to subject to a claim of custody. (Footnotes omitted.)

*Id.*, 1992 OK 39 at ¶ 15, 829 P.2d at 971–972.

¶ 26 The trial court concluded that the unclaimed property law placed notice requirements upon one who claims funds in the Mineral Owner's Fund in the State Treasury based upon the transfer of a mineral interest.

Although defendant's claim against the State Treasurer is not before us, the policy underlying the custodial taking of proceeds from pooled mineral interests owned by unknown or unlocated persons provides a backdrop for our consideration of the parties arguments.

### V.  The Summary Judgment Arguments

¶ 27 This appeal is governed by the accelerated procedure in Rule 1.36.  Okla.Sup.Ct. R., 12 O.S.2011, ch. 15, app. 1.  Our review is confined to the record and the briefs and arguments actually presented to the trial court.  Defendant responded to plaintiffs' motion for summary judgment specifically admitting the material facts and circumstances related to the plaintiffs mineral deeds.  Defendant set forth two additional undisputed facts that: 1) defendant did not make any representation about the subject matter other than what was contained in the offer letter and the mineral deed; and 2) defendant obtained a quiet title judgment on March 11, 2009, in Seminole County, No. CV–2008–378, vesting it with the rights of W.M. Croslin and Goldie Croslin in and to the subject oil and gas interest.[10]

¶ 28 In admitting the material facts on summary judgment, defendant took the position that plaintiffs had constructive knowledge of the mineral interest, the pooling order, production, and the custodial taking of the mineral proceeds and that plaintiffs should have investigated the mineral interest. The policy of the courts to favor the unwary rather than the crafty as expressed in *Upte-*

*graft v. Dome Petroleum,* 1988 OK 129 at ¶ 13, 764 P.2d at 1354, remains intact.  Plaintiffs and the trial court correctly relied on *Uptegraft* for the proposition that constructive knowledge is not a defense to false representation.  As to defendant's additional undisputed facts, plaintiffs' constructive fraud claim was grounded in the defendant's letter and defendant's mineral deeds, specifically the "if any" language in the deeds, and defendant waived the collateral attack argument.

¶ 29 For their first proposition in support of their motion for summary judgment, plaintiffs argued that the letter and the "bonus assignment" language in the mineral deed expressed a scheme to capitalize on their ignorance and that defendant intended to gain both the mineral interest and the mineral proceeds for about half the value of the accrued mineral proceeds.  Plaintiffs relied on both *Deardorf v. Rosenbusch* and *Berry v. Stevens.*  In response, defendant urged that a mineral interest purchaser has no legal duty to disclose all that it may know about the mineral interest and that fraud will not be presumed but must be established by clear and unequivocal evidence.  Defendant argued that it made no representation to plaintiffs regarding the mineral interest and had no duty to speak under *Uptegraft v. Dome Petroleum Co.,* and that *Deardorf v. Rosenbusch* and *Berry v. Stevens* are totally inapplicable because a mere offer is not a material misrepresentation.[11]

10.  On summary judgment, defendant argued that this suit is an impermissible collateral attack on the quiet title judgment in case No. CV–2008–378 in Seminole County.  However, defendant later waived this defense or issue, and it is not before us today.  Even so, we note that the quiet title judgment recites that the petition in CV–2008–378 was filed October 24, 2008, against the "The Unknown Heirs, Executors, Administrators, Devisees, Trustees, and Assigns of W.M. Croslin, Now Deceased, and Goldie Arlice Croslin, Now Deceased, and the State of Oklahoma, ex rel the Oklahoma Tax Commission" and that service was accomplished by publication.  Apparently, defendant did not name plaintiffs herein as parties and did not cause service of process upon them even though defendant knew the identities and whereabouts of the plaintiffs herein when it filed the quiet title action.  Notwithstanding, the quiet title judgment finds that plaintiffs herein are the only children of W.M. Croslin and Goldie

Arlice Croslin and the sole and only heirs who inherited the four mineral acres in Seminole County.  The judgment also finds that the plaintiffs herein executed mineral deeds conveying the mineral interest and assigning all monies attributed to the mineral interest to defendant herein and vests title to the four mineral acres and the royalty proceeds held in the State Treasury in defendant herein.  An inference arises from defendant's not naming plaintiffs herein as parties to the quiet title action that defendant did not want plaintiffs herein to know about the accrued mineral proceeds.

11.  Defendant argued that an offer speaks only to what a buyer is willing to pay and that it is not a representation of material fact under *Bowman v. Presley,* 2009 OK 48, 212 P.3d 1210.  Apparently persuaded by this argument, the Court of Civil Appeals found the defendant did not make any

¶ 30 The teachings of *Berry v. Stevens,* *Deardorf v. Rosenbusch,* and *Uptegraft v. Dome Petroleum Co.,* set out above, are all applicable here. Similar to the production in *Deardorf,* the accrued mineral proceeds undoubtedly motivated defendant's unsolicited offers to purchase the mineral interest. Although defendant's letter referred to "mineral interest" and did not mention accrued mineral proceeds, defendant's mineral deed conveyed the "mineral interest" and also made a representation about the accrued mineral proceeds. It provided that the grant of the mineral interest was intended to grant defendant the right to **"all royalties, accruals and other benefits, if any, from all Oil and Gas heretofore or hereafter run."** (Bold added). Instead of disclosing the nearly $10,000.00 of accrued mineral proceeds to the plaintiffs, defendant remained silent, and, with the "if any" language in the mineral deed, indirectly if not directly, created a false impression that defendant did not know of any production or any accruals from all oil and gas heretofore run. Plaintiffs relied, to their detriment, on the false impression created by the "if any" language. The "if any" language in the mineral deeds discouraged, rather than encouraged, the plaintiffs to make an independent investigation into the mineral interest.

¶ 31 Further, defendant discouraged plaintiffs from doubting defendant's truthfulness through the false impression that defendant had not investigated the ownership of the mineral interest. The false impression was created by the language in defendant's offer letter that "when the Mineral Deed has been received by our office, we will begin our title examination" and that the drafts will "be paid upon completion of the title examination."

¶ 32 The language in defendant's mineral deed assigning the **accruals of royalties, if any, from heretofore runs** gave rise to a duty on the part of defendant to disclose the whole truth, including all material facts about the accrual of the mineral proceeds. *Deardorf* expressed the principles governing defendant's duty-where defendant is under a duty to say nothing or to tell the whole truth, defendant's duty to tell the whole truth may arise from partial disclosure and defendant conveying a false impression by disclosing some facts and concealing others is guilty of fraud in that the concealment is in effect a false representation that what is disclosed is the whole truth. Plaintiffs were entitled to summary judgment on the legal issue of defendant's disclosure duty as a matter of law.

¶ 33 For their second proposition, plaintiffs contended that defendant violated the state's public policy expressed in the pooled mineral interests statutes, 52 O.S.2001, § 551, et seq., and the unclaimed property statutes, 60 O.S. 2001, § 651, et seq. Defendant responded that neither the pooled mineral interests statutes nor the unclaimed property statutes expressed a public policy requiring defendant to disclose the accrued mineral proceeds in offering to purchase plaintiffs' mineral interest and urged that this Court should refrain from creating public policy. Defendant argued that the statutory scheme for the custodial taking of undistributed proceeds from pooled mineral interests and the statutory scheme for custodial taking of unclaimed property were absolutely separate until the 2010 amendment to the unclaimed property statutes.[12]

¶ 34 Three decades ago, the Oklahoma Legislature expressed a public policy that

factual inducement, representation, or misrepresentation, citing ¶ 29 in the *Bowman* opinion. *Bowman* is factually inapposite and ¶ 29 in the *Bowman* opinion dealt with the doctrine of *caveat emptor.* The issues in *Bowman* arose out of a real estate listing by a real estate agent that knowingly erroneously overstated the square footage of a residential property. *Bowman,* 2009 OK 48 at ¶ 29, 212 P.3d at 1222–1223, recognized that the doctrine of *caveat emptor* may serve as a defense to a claim of fraudulent misrepresentation where a buyer has unjustifiably relied on a self-serving seller's representation of value, and at note 39, recognized that a seller's representation as to value is considered to be mere opinion, citing *Nowka v. West,* 1919 OK 367, 77 Okla. 24, 186 P. 220. See also, *Steiner v. Hughes,* 1935 OK 335, 172 Okla. 268, 44 P.2d 857, 861 (mere statement of value or cost or profit alone is not sufficient to prove fraud on part of a seller). In this case, we are not concerned with a self-serving seller or the marketplace principle of "let the buyer beware."

12. In 2010, the Oklahoma Legislature amended § 675 of Title 60 in the Uniform Unclaimed Property Act adding a new subsection D that provides: "Claims against the Mineral Owner's

the State will protect undistributed proceeds from forced pooled mineral interests for the rightful owners. The false impression created by the "if any" language in defendant's mineral deed cannot be ignored in light of this strong statutory policy.[13] Guided by *TXO Production Corp.*, we reject defendant's argument that the statutes providing for the custodial taking of undistributed forced pooled mineral proceeds and the unclaimed property statutes were absolutely separate until 2010.

¶ 35 For their final proposition on summary judgment, plaintiffs asserted they were entitled to rescission under 15 O.S.2001, § 233. Defendant argued that rescission is not available where, as here, "the contents of the Mineral Deed merely described that which Enerlex [defendant] wanted to buy and the amount Enerlex wanted to pay." Defendant made an offer to purchase the undivided mineral interest for a total of $4,100.00. Defendant's offer did not mention accrued mineral proceeds, and defendant's mineral deeds did not describe the amount defendant offered to pay for the accrued mineral proceeds. A clear inference arises from the "if any" language in the mineral deeds that defendant wanted to obtain the nearly $10,000.00 mineral proceeds without disclosing the existence of the mineral proceeds to plaintiffs.

¶ 36 Before allowing defendant to benefit from the mineral deeds, equity can and will, under the circumstances of this case, cause to be done what defendant was obligated to do. Defendant was obligated to disclose to the Croslin siblings that they were assigning $9,961.71 held in trust by the State Treasurer over to defendant as part of the conveyance of the mineral interest. The statutes[14] allow plaintiffs, upon discovering defendant's suppression of the truth, to re- scind the mineral deeds induced by defendant's false representation.

## VI. Summary

¶ 37 In summary, defendant wanted to spend a total of $4,100.00 in cash and get nearly $10,000.00 in cash plus four mineral acres and future income. To accomplish its goal, defendant offered to purchase the four mineral acres from plaintiffs for a total of $4,100.00, and relying on plaintiffs' ignorance of the nearly $10,000.00 of accrued mineral proceeds, defendant provided plaintiffs mineral deeds transferring both the four mineral acres and the accrued mineral proceeds. Defendant obtained the mineral deeds from plaintiff by false representation and suppression of the whole truth. Defendant is liable to plaintiffs for constructive fraud. Fraud in the procurement of a written instrument vitiates it in the hands of one seeking its benefit. *Berry v. Stevens*, 1934 OK 167 at ¶ 9, 31 P.2d at 954, *First National Bank in Durant v. Honey Creek Entertainment Corp.*, 2002 OK 11, ¶ 12, 54 P.3d 100, 104. Under the circumstances here, rescission is an appropriate remedy for defendant's misrepresentation and constructive fraud.

**OPINION OF THE COURT OF CIVIL APPEALS VACATED; SUMMARY JUDGMENT OF THE TRIAL COURT AFFIRMED.**

COLBERT, C.J., REIF, V.C.J., and KAUGER, WATT, EDMONDSON, TAYLOR, COMBS, and GURICH, JJ., concur.

WINCHESTER, J., concurs in result.

---

Fund shall be subject to the same statutory requirements and administrative rules as are applicable to claims under the Uniform Unclaimed Property Act." 2010 Okla.Sess.Laws, ch. 241, § 5.

**13.** For their third proposition, plaintiffs asserted that the heir finder statute, 60 O.S.2001, § 674.1, applied to defendant which we do not address in light of the public policy underlying the custodial taking of undistributed proceeds from forced pooled mineral interests.

**14.** 15 O.S.2001, § 233, now 15 O.S.2011, § 233, provides in part:

A party to a contract may rescind the same in the following cases only:

1. If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.