2013 OK 91

David F. WIDNER, Individually and as Trustee of the Robert Harold Widner Trust, and Norma Jean Widner Clements, individually and as Trustee of the Robert Harold Widner Trust, Plaintiffs/Appellees,

v.

ENERLEX, INC., Defendant/Appellant.

No. 109787.

Supreme Court of Oklahoma.

Oct. 29, 2013.

See also 308 P.3d 1041.

John L. Randolph, Jr., Tulsa, Oklahoma, for defendant/appellant.

Matthew H. McBee, Poteau, Oklahoma, for plaintiffs/appellees.

TAYLOR, J.

¶ 1 David F. Widner and Norma Jean Widner Clements (plaintiffs) sued Enerlex, Inc. (defendant) seeking rescission of mineral deeds and tort damages. The issues presented are 1) whether, under the facts and circumstances in this case, the defendant owed the plaintiffs a duty to disclose the pooling order, the production, and the accrued mineral proceeds when it made an unsolicited offer to purchase their mineral interests in Seminole County and provided the mineral deeds to be executed, and if so, 2) whether rescission is an appropriate remedy. We recently addressed similar issues in *Croslin v. Enerlex, Inc.*, 2013 OK 34, 308

P.3d 1041. *Croslin* held that Enerlex owed a duty to Croslin to disclose the production and the accrued mineral proceeds when it offered to purchase his mineral interest and provided the mineral deed conveying the mineral interest and assigning accrued mineral proceeds, if any, and that rescission was an appropriate remedy for breach of the disclosure duty.

¶ 2 Plaintiffs initiated this suit in the district court on the same day the *Croslin* case was filed. This case and the *Croslin* case proceeded in the district court as companion cases, and by order, this appeal was made a companion with the *Croslin* appeal. As in *Croslin*, plaintiffs contended that the undisputed facts clearly showed the defendant misrepresented material facts, the misrepresentation gave rise to a legal obligation to disclose all material facts about the mineral interests, and defendant's failure to disclose all known material facts constituted constructive fraud. Here, as in *Croslin*, the question as to the legal effect of the undisputed facts challenges plaintiffs' entitlement to summary judgment as a matter of law on the constructive fraud claim. We review questions of law *de novo*. *Id.* at ¶ 9, 308 P.3d at 1045. The trial court's grant of plaintiffs' claim for rescission and cancellation of the mineral deed is governed by principles of equity, and equity will cancel a deed where it is clear that an alleged false representation deceived the complainant and caused injury. *Id.* ¶ 10, 308 P.3d at 1045.

¶ 3 The following facts are undisputed. Robert Harold Widner (Widner) owned mineral interests in Seminole County, Oklahoma, at the time of his death in 2002. Plaintiffs are the sole heirs of Widner and the beneficiaries of the Robert Harold Widner Trust. Widner's Seminole County mineral interests were included in an Oklahoma Corporation Commission pooling order in Cause CD No. 200403170–T, Order No. 491924, dated July 6, 2004. By 2008, mineral proceeds in the amount of $34,413.94 had accrued from production in Seminole County under the pooling order. The accrued funds were reported and transmitted to the State of Oklahoma for Widner's benefit pursuant to the statutory

custodial taking of proceeds from pooled mineral interests owned by unknown or unlocated persons. *See* 52 O.S.2001, §§ 551, *et seq.*

¶ 4 Defendant is in the business of buying mineral interests. In 2008, defendant made unsolicited offers to the plaintiffs to buy their Craig County, Pottawatomie County, and Seminole County mineral interests. When it made the offers, defendant knew, but did not disclose to plaintiffs, that the Seminole County mineral interests were included in an Oklahoma Corporation Commission pooling order; that the pooling order listed Widner and the Widner trust as parties; that the pooling order allowed Widner a $60.00 per acre bonus and a 1/8th royalty; that there was production under the pooling order; and, that $34,413.94 had been reported and transmitted for Widner's benefit to the Oklahoma Corporation Commission pursuant to the pooling order and 52 O.S.2001, § 552.[1]

¶ 5 Unaware of the pooling order, production, and accrued mineral proceeds, plaintiff David F. Widner sold his mineral interests to defendant for $3,800.00 plus a $250.00 signing bonus and, on November 5, 2008, executed the deed prepared by defendant. Also unaware of the pooling order, production, and accrued mineral proceeds, plaintiff Norma Jean Widner Clements sold her mineral interests to defendant for $3,000.00 plus a $250.00 signing bonus and, on November 13, 2008, executed the deed prepared by defendant. It is undisputed that plaintiffs would not have executed the mineral deeds had they known about the Seminole County production or accrued mineral proceeds.

¶ 6 The mineral deeds prepared by defendant in this case mirror those in *Croslin*. In each of the mineral deeds, the granting clause conveyed, transferred, assigned, and delivered the "interest in and to all of the Oil, Gas, and any other classification of valuable substance . . . in and under and **that may be produced** from the following described lands. . . ." (Bold added.) The language that followed the granting clause explained its meaning:

> it being understood and agreed that this transfer and assignment covers and **includes** that the grantee shall have, receive, and enjoy the herein granted undivided interests in and to **all royalties, accruals and other benefits, if any, from all Oil and Gas heretofore or hereafter run,** whether they be held therefore by any purchaser or other legal entity, or hereafter produced, sold and paid to the Grantee. The Grantor hereby irrevocably appoints and constitutes the Grantee as agent and attorney-in-fact for the limited purpose only of executing division and transfer orders and all other instruments necessary to make fully effective this assignment and conveyance so that the Grantee may act in Grantor's place and stead for such purpose.

(Bold added.)

¶ 7 By letter dated October 6, 2009, defendant advised plaintiff Norma Jean Widner Clements that it believed the State of Oklahoma was holding more than $10,000.00 attributable to her former mineral interests and requested that she sign an agreement waiving her right to the mineral proceeds. The letter offered, that in return, "Enerlex will remit to you 25% of the funds received from the State of Oklahoma that accrued prior to your transfer to Enerlex. . . ."[2]

---

1. Pursuant to 52 O.S.2001, § 552, the undistributed mineral interest proceeds were reported and transmitted to the Oklahoma Corporation Commission, deposited in the Mineral Owner's Escrow Fund, and then, pursuant to 52 O.S.Supp.2003, § 554, the funds were transferred to the Mineral Owner's Fund in the State Treasury.

2. Under 60 O.S.2011, § 674.1, Enerlex was entitled to retain, at the most, 25 %, but not 75% as offered, of the funds held for Widner. Originally enacted in 1990 (1990 Okla.Sess.Laws, ch. 301, § 1), the language remains the same. Section 674.1 reads:

   > No person who:
   > 1. informs a potential claimant of any unclaimed funds or other property, tangible or intangible, held pursuant to the Uniform Disposition of Unclaimed Property Act that such claimant may be entitled to claim such unclaimed property; or
   > 2. files a claim for any funds or other property, tangible or intangible, on behalf of a claimant of such funds or property, shall contract for or receive from the claimant, for services, an amount that exceeds twenty-five percent (25%) of the value of the funds or property recovered.

Plaintiff did not execute defendant's proposed agreement. Instead, plaintiffs filed suit against defendant on October 23, 2009.

¶ 8 Plaintiffs' petition alleged that defendant, when it offered to purchase their mineral interests, had a duty to inform them of the pooling order, the production, and the accrued mineral proceeds; that defendant's failure to inform them constituted constructive fraud; and that defendant's deceitful and fraudulent actions amount to fraud and justify rescission, consequential damages, actual damages, and punitive damages. Defendant answered and counter-claimed that it was the rightful owner of the mineral interests and that plaintiffs filed suit in bad faith and slandered title of the mineral interests.

¶ 9 Plaintiffs moved for summary judgment. The trial court granted partial summary judgment in favor of plaintiffs on the false representation claim and ordered an accounting of royalty proceeds paid to defendant, leaving other issues unresolved. The parties agreed to the accounting and waived all other claims and issues for purposes of summary judgment, and the trial court entered the summary judgment order on appeal. Similar to its summary judgment in *Croslin*, the trial court concluded that: 1) a mineral interest purchaser has the duty to disclose production and failure to do so is a false representation, citing *Deardorf v. Rosenbusch*, 1949 OK 117, 206 P.2d 996; 2) a seller's constructive knowledge of production is not a defense to fraudulent misrepresentation, citing *Uptegraft v. Dome Petroleum Corp.*, 1988 OK 129, 764 P.2d 1350; and 3) the unclaimed property statutes and regulations place additional notice requirements upon one who claims funds in the Mineral Owners Escrow Fund based upon the transfer of a mineral interest. The trial court granted plaintiffs' claim for rescission and cancelled the mineral deeds, declared plaintiffs to be the rightful owners of the mineral interests, and directed plaintiffs to return the purchase money defendant paid them less

If the funds or property involved are mineral proceeds, the amount for services shall not include a portion of the underlying minerals or any production payment, overriding royalty, or similar payment.

any royalty proceeds that may have been paid to defendant.

¶ 10 Defendant appealed. The Court of Civil Appeals reversed the summary judgment, finding that defendant made no factual inducement, representation or misrepresentation that gave rise to a duty to disclose the pooled mineral interests or production. The Court of Civil Appeals also determined defendant had no duty to disclose the pooled mineral interests and accrued mineral proceeds to the plaintiffs under the unclaimed property statutes or the pooled mineral interests statutes. We previously granted plaintiffs' petition for certiorari review.

¶ 11 Following the teachings of *Berry v. Stevens*, *Deardorf v. Rosenbusch*, and *Uptegraft v. Dome Petroleum Corp.*, *Croslin* found that knowledge of the accrued mineral proceeds undoubtedly motivated Enerlex to extend unsolicited offers to purchase the mineral interest and that the "if any" language in the mineral deed prepared by Enerlex, indirectly if not directly, created a false impression that Enerlex did not know of any production or any accruals from all oil and gas heretofore run. *Croslin*, 2013 OK 34, ¶ 30, 308 P.3d at 1051. Upon review of the summary judgment record on appeal, we find *Croslin* governs the issues presented here.

■ ¶ 12 As in *Croslin*, the language in defendant's mineral deed assigning the accruals of royalties, if any, from heretofore runs gave rise to a duty on the part of defendant to disclose the whole truth, including all material facts about the accrual of the mineral proceeds. Instead of disclosing the $34,413.94 of accrued mineral proceeds to the plaintiffs, defendant remained silent and allowed plaintiffs to rely, to their detriment, on the false impression created by the "if any" language in the mineral deeds. As in *Croslin*, plaintiffs were entitled to summary judgment on the legal issue of defendant's disclosure duty as a matter of law. *Id.* at ¶ 32, 308 P.3d at 1051.

B. The provisions of this section shall apply to contracts executed on or after July 1, 1990.

¶ 13 Similar to its goal in *Croslin*, defendant, in this case, wanted to spend a total of $7,300.00 in cash and get $34,413.94 in cash plus mineral interests in Craig County, Pottawatomie County, and Seminole County and future income. To accomplish its goal, defendant offered to purchase the mineral interests from plaintiffs for a total of $7,300.00, and relying on plaintiffs' ignorance of the $34,413.94 of accrued mineral proceeds, defendant provided plaintiffs mineral deeds transferring both the mineral interests and the accrued mineral proceeds. Defendant obtained the mineral deeds from plaintiffs by false representation and suppression of the whole truth. Defendant is liable to plaintiffs for constructive fraud. Fraud in the procurement of a written instrument vitiates it in the hands of one seeking its benefit. *Id.* at ¶ 37, 308 P.3d at 1052. Rescission is an appropriate remedy for defendant's misrepresentation and constructive fraud.

**OPINION OF THE COURT OF CIVIL APPEALS VACATED; SUMMARY JUDGMENT OF THE TRIAL COURT AFFIRMED.**

ALL JUSTICES CONCUR.